ALASKA INDUSTRIAL BOARD ET AL. *v.* CHUGACH
ELECTRIC ASSOCIATION, INC., ET AL.

No. 303.   Argued April 8, 1958.—Decided April 28, 1958.

*John H. Dimond* argued the cause for petitioners. On the brief were *J. Gerald Williams,* Attorney General of Alaska, for the Alaska Industrial Board, and *Mr. Dimond* for Jenkins, petitioners.

*Frederick O. Eastaugh* argued the cause for respondents. With him on the brief was *Ralph E. Robertson.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case presents an important question under the Alaska Workmen's Compensation Act, 2 Alaska Comp. L. Ann., 1949, § 43-3-1 *et seq.* Petitioner Jenkins, an employee of respondent Chugach Electric Association, was injured in the course of his employment. Three surgical operations were required: amputation of his left arm at the shoulder; amputation of four toes on his left foot; and later, amputation of his right leg below the knee. Though the injury occurred in September 1950, the left foot had not healed three years later. As a result Jenkins was for a rather long period totally disabled. Respondents made "temporary disability" [1] payments to

---

[1] Section 43-3-1 of the Act makes the following provision for "temporary disability":

"For all injuries causing temporary disability, the employer shall pay to the employee, during the period of such disability, sixty-five per centum (65%) of his daily average wages. And in all cases where the injury develops or proves to be such as to entitle the employee to compensation under some provision in this schedule, relating to cases other than temporary disability, the amount so paid or due him shall be in addition to the amount to which he shall be entitled under such provision in this schedule.

"Payment for such temporary disability shall be made at the time

Jenkins for approximately 38 weeks ($95.34 a week or a total of $3,645). At that point they decided that Jenkins had been totally and permanently disabled[2] since the date of the last amputation and was therefore entitled to a lump-sum award of $8,100 under the Act and no more.[3] They thereupon sent him a check for that amount less the $3,645 already received, viz., $4,455.

---

compensation is customarily paid for labor performed or services rendered at the plant or establishment of the employer liable therefor and not less than once a month in any event.

"The average daily wage earning capacity of an injured employee in case of temporary disability shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his daily wage earning capacity. If such earnings do not fairly and reasonably represent his daily wage earning capacity, the Industrial Board shall fix such daily wage earning capacity as shall be reasonable and have a due regard for the nature of his injury, the degree of temporary impairment, his usual employment and any other factor or circumstance in the case which may affect his capacity to earn wages in his temporary disabled condition."

[2] Section 43–3–1 of the Act defines total and permanent disability as follows:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, or hearing in both ears, shall constitute total and permanent disability and be compensated according to the provisions of this Act with reference to total and permanent disability.

"Amputation between the elbow and the wrist shall be considered equivalent to the loss of an arm, and amputation between the knee and the ankle shall be considered equivalent to the loss of a leg."

[3] Section 43–3–1 of the Act provides:

"Where any such employee receiving an injury arising out of, and in the course of his or her employment, as the result of which he or she is totally and permanently disabled, he or she shall be entitled to receive compensation as follows:

"If such employee was at the time of his injury married he shall be entitled to receiye Seven Thousand Two Hundred Dollars ($7,200.00) with Nine Hundred Dollars ($900.00) additional for each child under the age of eighteen (18) years, but the total to be paid shall not exceed Nine Thousand Dollars ($9,000.00)."

Jenkins then applied to the Alaska Industrial Board for continuing benefits for temporary disability, despite his receipt of the lump-sum award for total and permanent disability. The Board allowed him temporary disability from the date of the last amputation. This temporary disability, said the Board, "continues to this date, no end medical result having been reached."

Respondents thereupon instituted this action in the District Court to set aside the Board's decision. That court reversed the Board, holding that an award of temporary disability could not be granted under the Act for physical disability arising from the same accident in which a scheduled, lump-sum award for total permanent disability had been granted. 122 F. Supp. 210. The Court of Appeals, sitting *en banc,* affirmed, by a divided vote, modifying the judgment. 245 F. 2d 855. By that modification the lump-sum award was not to be reduced by the amount received as temporary disability prior to that time. The case is here on a petition for certiorari. 355 U. S. 810.

The Court of Appeals reasoned that the lump-sum award for total and permanent disability was intended to represent a capitalization of future earnings. It concluded, therefore, that Jenkins had been compensated by the lump-sum award for any loss of future earnings and that he could not get a further award for loss of earnings, the lump-sum award being intended "as a maximum award." *Id.,* at 862.

We read the Act differently. The lump-sum awards for total and permanent disability under this Compensation Act ignore wage losses. Whatever the employee may have made before, whatever his wages may be after the injury, the award is the same. To that extent it is an arbitrary amount. But it is the expression of a legislative judgment that on average there has been a degree of impairment, and whatever may be the fact in a par-

ticular case, the lump sum should be paid without more. See 2 Larson, Workmen's Compensation, § 58–10.

There may, nevertheless, be a continuing ability to do some work; and as long as that remaining ability exists there is a factual basis for temporary disability awards. That seems to be the theory of the Act for it extends those awards to "all injuries causing temporary disability" and bases them on the "average daily wage earning capacity" of the injured employee,[4] as determined by the Board. That award takes care of the lost wages during the healing period and until the employee is able to return to work though perhaps at a different job and at reduced pay. It also compensates him for any temporary loss of earning power based on the "wage earning capacity" [5] that remains after the injury. The Court of Appeals assumed there was "no remaining ability to work" and therefore "no foundation for temporary disability benefits." 245 F. 2d, at 862. But the Act, we think, is drawn on a different hypothesis. It seems to provide a system of temporary disabilities to all who are injured, whether their injuries are disfigurement,[6] partial permanent disability,[7] total and permanent disability,[8] or so minor as to fall in lesser categories. Any other reading would seem to be hostile to the benign purpose of this legislation. Cf. *Baltimore & Phila. S. Co.* v. *Norton,* 284 U. S. 408, 414.

Respondents maintain that Jenkins' claim was not timely filed and that for other reasons also the Board had

---

[4] Note 1, *supra.*

[5] Note 1, *supra.*

[6] Section 43–3–1 provides:

"The Industrial Board may award proper and equitable compensation for serious head, neck, facial, or other disfigurement, not exceeding, however, the sum of Two Thousand Dollars ($2,000.00)."

[7] Section 43–3–1 provides a schedule of partial permanent liability for losses of thumbs, toes, fingers, arms, legs, eyes, nose, and ear.

[8] See note 2, *supra.*

no jurisdiction to enter this award. These questions were decided adversely to respondents by the Court of Appeals and no cross-petition was filed. here. Those questions are therefore not open to respondents at this stage. *LeTulle* v. *Scofield,* 308 U. S. 415, 421–422.

The judgment is reversed and the cause is remanded to the District Court for proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE WHITTAKER, believing that an injured workman cannot be, or be legally compensated as, both "totally and permanently disabled" and "temporarily totally disabled" at one and the same time under the Alaska Workmen's Compensation Act, would affirm for the reasons stated by the Court of Appeals, 245 F. 2d, at 862.