JONES *v.* CUTLER OIL COMPANY.

WORKMEN'S COMPENSATION—SPECIFIC LOSS—PREVIOUS PARTIAL DISABILITY—EQUALLY DIVIDED COURT.

The payment of workmen's compensation for a specific loss of fingers, suffered while plaintiff was receiving compensation for partial disability because of a previous and independent injury to his leg is affirmed, the Supreme Court being equally divided as to whether portion of award in excess of statutory maximum was valid (CLS 1954, §§ 412.9, 412.10).

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation § 247.

Appeal from Workmen's Compensation Appeal Board. Submitted October 7, 1958. (Docket No. 1, Calendar No. 47,681.) Decided June 6, 1959.

Jacob C. Jones presented his claim against Cutler Oil Company, employer, and State Accident Fund, insurer, for compensation because of reduced earning capacity resulting from industrial injury. Award to plaintiff. Defendants appeal. Affirmed by a court equally divided as to modification of award.

*Warner & Hart,* for plaintiff.

*Harry F. Briggs* (*Richard J. Anderson,* of counsel), for defendants.

SMITH, J. (*for affirmance*). The claimant and plaintiff, Jacob C. Jones, was hurt while working in a filling station. He fell, and injured his leg. After getting out of the hospital he was offered work by his former employer, but it involved climbing ladders, which he could not do; so he found another job, within his lessened capacity. This was with another employer and at a lower pay. For such loss in wage-earning capacity he was ultimately awarded compensation for 2/3 of the wage loss he had suffered.*

Had nothing else occurred he could have drawn this compensation as long as he was required to be

---

* The Appeal Board found, in part, as follows:

"Plaintiff had not recovered from the effects of his injury but did obtain employment at work within his capacity to perform on October 6, 1955. Thereafter he earned $66.16 per week on his favored work and did because of the wage loss he suffered, accrue a right to be compensated pursuant to the provisions of section 10, part 2 of the workmen's compensation act (CLS 1954, § 412.10 [Stat Ann 1955 Cum Supp § 17.160]). His compensation pursuant to the provisions of section 10, part 2, is established at 66-2/3% of the difference between his average weekly wage before the December 15, 1954 injury of $97.85 and his average weekly wage he is able to earn thereafter of $66.16 per week which we find is $21.18 per week."

on his favored work (up to 500 weeks from the date of the injury).

But misfortune again smiled on him. He had been on the new, lower-pay job for only a few days when he suffered another accident. Fingers were cut off both of his hands. For such amputations our law provides specific payments, so much for a leg, so much for an arm, so much for a finger. (CLS 1954, § 412.10 [Stat Ann 1955 Cum Supp § 17.160].)

Our issue arises in this way: Compensation for the leg injury had been paid voluntarily for a total of 42 weeks, representing total disability from December 16, 1954 to October 5, 1955. Such payments were then stopped, as of October 6, 1955, upon the ground that the employee had returned to work "at the same wage as when injured." Application for hearing was filed on March 4, 1957, contesting the fact of return to work at the same wage. Upon the hearing held thereon upon April 30, 1957 voluntary lump-sum payments by the second employer, on account of the amputations arising from the second injury, were made a matter of record. It was the ruling of the referee, with respect to such payments, that they did not "alter plaintiff's entitlement to compensation" arising from the leg injury. Appeal to the appeal board resulted in a division upon the issue, the dissenting member stating that "the plaintiff is not entitled to any further compensation for his first injury covering the period of time for which he has been fully compensated for his second injury at the rate of $42 per week," and, further, that "the plaintiff will not be eligible for further compensation for his first injury until the expiration of the time for which he has been paid full compensation for his second injury." The majority held to the contrary and the case is before us upon leave granted.

Appellants assert that "an award of continuing compensation is not proper where the plaintiff is also receiving compensation from another insurance carrier for a subsequent injury." We are cited to no portion of the statute so stating. Rather, it is urged that such award "would do violence to the original concepts embodied in the act" and that "the combined compensation during this period exceeds the maximum provided in the act.". Such maximum, appellants argue, arises thus:

"The workmen's compensation act provides but a single rate of compensation, to-wit, 66–2/3 [%] of the employee's average weekly wage, and this percentage is applicable to all disabilities and is the maximum compensation provided."

The question presented involves the correlation of the wage-loss awards with those of the specific awards. Are they, upon the facts before us, mutually exclusive?

The question is not complex unless made so. Here the workman suffered 2, separate and distinct, unrelated injuries, to separate parts of the body, and while in the employ of different employers. We will first consider the matter of compensation for the leg injury. It was based upon the workman's decreased earning capacity because of the injury suffered. This, in turn, depends upon a host of factors: it involves the general wage level since the accident, the hours worked, the job performed, the skill and training required, even, at times, the payment of sympathetic wages out of the largess of the heart. Wages actually earned are a factor, but only one. The real inquiry relates to the monetary worth of the injured workman's services in the open labor market under normal employment conditions. See *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich 190; *Pigue* v. *General Motors Corp.*, 317 Mich 311, 316,

317.    Thus it was that plaintiff here was awarded compensation under section 10 of part 2 "at 66-2/3% of the difference between his average weekly wage before the December 15, 1954 injury of $97.85 and his average weekly wage he is able to earn thereafter of $66.16 per week which we [the appeal board] find is $21.18 per week."

But there is another basis for compensability in certain enumerated cases.    These involve the "schedule" awards (from the language of the statute saying that:    "In cases included by the following *schedule* the disability in each case shall be *deemed* to continue for the period specified, and the compensation so paid for such injury *shall* be as specified therein, to-wit:" [here follow the specific awards for loss of fingers, toes, hands, arms, eyes, et cetera] Emphasis above added).    These sums represent a stated legislative determination that the enumerated injuries shall have compensation at a fixed figure. Thus the injury is "deemed" to continue for a specified number of weeks, regardless of the actual period of continuance.    The compensation paid does not turn upon wages lost.    Wage loss, in fact, or gain, is immaterial.    See, *e.g., Bethlehem Steel Co.* v. *Cardillo* (CCA), 229 F2d 735. It is an arbitrary, fixed sum, and it "shall" be paid as specified.    The purpose of thus fixing an arbitrary sum was to attempt to minimize the uncertainty, with attendant litigation, over a mixed economic and medical question of the utmost complexity.    See Riesenfeld and Maxwell, Modern Social Legislation, p 293.

The law, it must be stressed, does not provide that the specific awards granted in section 10 depend upon the difference between wages earned before the accident and wages earned afterwards.    In other words, the wage *loss* due to an amputation is not a factor in the amount of the recovery.    The law presumes a fixed amount of loss.    If a leg amputee,

through some miracle, were able to return to his work, fully recovered, in 2 weeks, the award would nevertheless continue for a total of 215 weeks. The disability, says that statute, "shall be deemed to continue for the period specified."

On the contrary, in case of partial disability where a schedule award is not made by statute, compensation is based on "the difference between * * * wages before the injury and * * * wages which he is able to earn thereafter." Thus the essential difference: With respect to the schedule awards the amount is fixed and arbitrary, though its numerical magnitude is not the same for all, since the amount of the arbitrary sum depends upon how much the injured party was earning when he was hurt. To be contrasted with these schedule awards, then, are the first group above mentioned, *i.e.,* those dependent entirely upon loss of wage-earning capacity. Here our law applies a "before and after" test, the award being computed as a percentage of the difference between wages the accident victim was able to earn before the injury and those he is able to earn thereafter.

We have long, in fact, recognized that "a claim for a statutory schedule award for loss of a member, such as the loss of an eye or an arm or a foot, under CL 1929, § 8426,* is separate and distinct from, and should not be confused with, a claim under such statute for compensation for disability not resulting in the loss of a member. We have often recognized the distinction between the 2 types of disability under the compensation law." *Henderson* v. *Consumers Power Co.,* 301 Mich 564, 580. See, also, *Morgan* v. *Lloyds Builders Inc.,* 344 Mich 524.

The difference between the specific awards and those involving a wage loss was well put recently

---

* As amended, this is CLS 1954, § 412.10 (Stat Ann 1955 Cum Supp § 17.160).—REPORTER.

by the supreme court of the United States in *Alaska Industrial Board* v. *Chugach Electric Association, Inc.*, 356 US 320 (78 S Ct 735, 2 L ed 2d 795). In this case the workman's injuries necessitated amputation of the left arm, the right leg, and toes on the left foot. The injuries to the left foot were, because of burns received, slow in healing and, consequently, a long period of total disability ensued. The workman was paid a lump-sum award because of the amputations (these also constituting "total and permanent disability" under the Alaska workmen's compensation act*) and he "then applied to the Alaska industrial board for continuing benefits for temporary disability, despite his receipt of the lump-sum award for total and permanent disability." In upholding such award the court spoke as follows (pp 323, 324):

"The lump-sum awards for total and permanent disability under this compensation act ignore wage losses. Whatever the employee may have made before, whatever his wages may be after the injury, the award is the same. To that extent it is an arbitrary amount. But it is the expression of a legislative judgment that on average there has been a degree of impairment, and whatever may be the fact in a particular case, the lump sum should be paid without more. See 2 Larson, Workmen's Compensation, § 58.10.

"There may, nevertheless, be a continuing ability to do some work; and as long as that remaining ability exists there is a factual basis for temporary dis-

---

* (Part of footnote in *Alaska Industrial Board Case*.) "²Section 43-3-1 of the act defines total and permanent disability as follows: " 'The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any 2 thereof, or hearing in both ears, shall constitute total and permanent disability and be compensated according to the provisions of this act with reference to total and permanent disability. " 'Amputation between the elbow and the wrist shall be considered equivalent to the loss of an arm, and amputation between the knee and the ankle shall be considered equivalent to the loss of a leg.' " (2 Alaska Comp Laws Ann [1949] § 43-3-1.)

ability awards. That seems to be the theory of the act for it extends those awards to 'all injuries causing temporary disability' and bases them on the 'average daily wage-earning capacity' of the injured employee, as determined by the board. That award takes care of the lost wages during the healing period and until the employee is able to return to work though perhaps at a different job and at reduced pay. It also compensates him for any temporary loss of earning power based on the 'wage-earning capacity' that remains after the injury. The court of appeals assumed there was 'no remaining ability to work,' and therefore 'no foundation for temporary disability benefits.' *Alaska Industrial Board* v. *Chugach Association, Inc.,* 245 F2d 855, 862. But the act, we think, is drawn on a different hypothesis. It seems to provide a system of temporary disabilities to all who are injured, whether their injuries are disfigurement, partial permanent disability, total and permanent disability, or so minor as to fall in lesser categories. Any other reading would seem to be hostile to the benign purpose of this legislation. *Cf., Baltimore & Philadelphia S. Co.* v. *Norton,* 284 US 408, 414 (52 S Ct 187, 76 L ed 366)." (Footnotes in original omitted.)

The reasoning is equally applicable to the situation before us. It is clear not only from this case but the decisions of this jurisdiction that the lump-sum award is an arbitrary amount based upon a presumed impairment due to the loss of the amputated member. The wage-loss award is based upon the remaining ability to work, and the necessity therefor, and is reckoned in terms of the actual impairment of such ability. There have been 2 losses, arising from 2 injuries. As the dissenting member of the appeal board well phrased the matter: "The 2 injuries carry separate and distinct bases for the payment of compensation. The first is dependent entirely upon loss of wage-earning capacity. The

second is completely independent of loss of wage-earning capacity and is payable even though full wage-earning capacity should continue." This being the case, compensation payments for both losses are no more "double" payments than 2 successive payments made by 2 successive tort-feasors to an automobile driver for 2 successive accidents. The fact that each involves loss or damage to the same automobile has never been held in our law to preclude payment of damages for a second, unrelated injury. Similarly, an award for one loss, even up to the maximum set by law, does not preclude an award for a second loss merely because the same wage earner, rather than the same automobile, is involved in each. The workmen's compensation act could, it is true, command a result so foreign to our law. But the words of command have not yet been pointed out to us.

Attempt is made to distinguish the *Alaska Industrial Board Case, supra,* on the ground that it involves lump-sum awards ignoring wage losses, whereas our specific awards, it is said, are based upon earnings prior to injury. We cannot accept the distinction. The issue is not what our specific award is "based" upon but whether it (like the Alaskan act) ignores wage losses. This it does. As we have seen, our employee may return to work in 2 weeks, indeed at a higher wage, yet his award for an amputation will continue without diminution. What is the Alaskan law? "Whatever the employee may have made before, whatever his wages may be after the injury, the award is the same." *Alaska Industrial Board* v. *Chugach Electric Association, supra.*

But appellants' objections, as we have noted, are concerned not only with an alleged violation of the maximum compensation provisions of the act, but also with an asserted doing of "violence to the original concepts embodied in the act."

Let us look, then, at original concepts. The act, for reasons we assume we need not explore again and again, purports to compensate an employee who receives a personal injury arising out of and in the course of employment. (CL 1948, § 412.1 [Stat Ann 1950 Rev § 17.151].) So far as original concepts are concerned, does the concept of industrial injury extend to all injuries received in and out of employment, or is it restricted solely to the first? The act, as we have observed, does not say there shall be compensation only for the first injury so received. There being no explicit proviso thus, is there some "original concept," some major premise in compensation law, unexpressed in the act, but nevertheless controlling of decision, that only the first injury costs money, and that subsequent injuries, to one already disabled, are, so to speak, on the house? Is an injured workman, still suffering from his disability, to lose compensation arising from his decreased wage-earning capacity, not because he gets well, but because he gets worse, because he suffers an amputation from a second, unrelated, accident? To us it is not conceivable that remedial legislation be thus interpreted. Its effect would be to remove from its protection those most in need of the nurture and comfort, namely, those already handicapped in the competitive economic struggle by a subsisting, work-incurred, disablement. The critical consideration, as we have heretofore pointed out, turns on the fact that this workman has suffered 2 losses. The urged interpretation, restricting him to compensation for 1 only, is not in harmony with the humanitarian objectives of the act nor the liberal construction it must receive to accomplish its beneficent purposes.

Appellants suggest, as well, that we reverse the appeal board in this case lest a contrary interpretation permit awards for successive injuries to make it more profitable for a man to be sick than to be well.

See 2 Larson, Workmen's Compensation Law, §§ 59.41–59.43. The argument is not impressive upon the facts before us. The plaintiff's compensation from both awards totals, until they are paid out, some $63 per week as compared with the $98 per week he was earning with his first employer before the unfortunate series of accidents commenced. The profit to plaintiff Jones, as we view the stumps on his hands and his injured leg, as well as his reduced earning capacity, is not visible to us, nor is the incentive for another to go and do likewise. The argument *in terrorem* is not persuasive.

Neither the case of *O'Brien* v. *Albert A. Albrecht Co.,* 206 Mich 101 (6 ALR 1257), nor *Wolanin* v. *Chrysler Corp.,* 304 Mich 164, relied upon by appellants, involved the correlation of specific and wage-loss awards and do not control the situation before us. Insofar as the language of the *O'Brien Case, supra,* 106, that a man "cannot be more than totally disabled," is concerned, this may well be true as a matter of semantics, but we are not dealing with semantics. This Court, like all others, has held for years that "total disability" under the compensation act does not mean utter prostration, complete physical helplessness, but occupational disability. See *Finch* v. *Ford Motor Company,* 321 Mich 469 (syllabus 2). As long as those who are, legally speaking, totally disabled, must continue to work they are not without the protection afforded all others who must work. More in point on this issue is our language in *Hebert* v. *Ford Motor Co.,* 285 Mich 607, 613, 614, wherein we said:

"The fact that in 1927 plaintiff, engaged in skilled employment, suffered an accidental injury which totally destroyed his earning capacity in the employment in which he was working at the time of the accident does not preclude him from recovering compensation for total disability arising from an

accident in another kind of employment in which he was engaged under the act as it now stands."

The principle controlling the case before us finds felicitous expression in the landmark opinion of Mr. Justice VOELKER in *Van Dorpel* v. *Haven-Busch Co.*, 350 Mich 135. Although this case involved not the precise issue before us, but a cognate issue, its holding upon the exclusive nature of a specific award is basic to our determination here. Infinite varieties of questions, concerning not only the immediate and ultimate effects of a single injury, but of those of multiple or successive injuries, come before the courts of this and other countries. These questions are common to all nations seeking, by legislation, solution to the problems of the industrial injury. So far as our research discloses, a common solution is being found. The practice, long established in our jurisdiction, of turning to the English decisions, not for precedent but for analysis of comparable problems (*e.g.*, *Hills* v. *Blair*, 182 Mich 20 (7 NCCA 409); *Wolanin* v. *Chrysler Corp.*, 304 Mich 164) may well justify a reference to the English solution of a comparable issue. In *Thompson* v. *London & North Eastern R. Co.*, [1935] 2 KB 90, a workman sustained an injury to his hand for which compensation (at the rate of 19s. 6d. a week) was paid him for partial loss of earning capacity. After his return to work he suffered the second loss to which we have heretofore made reference, meeting with a second accident, the compensation payable in respect of which, was 22s. 7d. a week. The applicable workman's compensation act provided that: "(c) The weekly payment shall in no case exceed 30 shillings."* Despite the argument of William Shakespeare, counsel for appellant, that the sum of the 2 awards obvi-

---

* Workmen's compensation act of 1925 (15 & 16 Geo 5, ch 84), pt 1, § 9, sub-s 1(c).

ously (42 s. 1d.) exceeded the 30s. maximum of the act, the court of appeal approved the payment of both awards in full, holding that the 30s. maximum did not limit the award for 2 successive injuries. In the words of Romer, L.J. (pp 103, 104):

"But, on the other hand, there is this provision: '(c) The weekly payment shall in no case exceed 30s.' That is perfectly plain, is it not?—the weekly payment which is to be paid by the employer in respect of the particular accident is not to exceed 30s. It does not say that in no circumstances shall a workman be entitled to weekly payments under the workmen's compensation act, 1925, which in all shall exceed 30s."

Nor, we will observe, does our statute. This holding, we have noted, was approved and followed in *Doudie* v. *Kinneil Cannel & Coking Coal Co., Ltd.,* [1947] AC 377, overruling the contrary Scottish opinion expressed in *M'Kinstrey* v. *Auchinlea Coal Co.,* 1920 SC 75, 79.

Just as the English statute, so our statute has a provision as to maximum payments, it reading as follows:

"The amounts specified in this clause are all subject to the same limitations as to maximum and minimum as above stated. In case of the loss of 1 member while compensation is being paid for the loss of another member, compensation shall be paid for the loss of the second member for the period herein provided, payments to begin at the conclusion of the payments for the first member." CLS 1954, § 412.10 (Stat Ann 1955 Cum Supp § 17.160).

What does this clause say? What does the word "maximum" (as here employed) mean? We could, of course, approach it as a grammarian would some obscure word in a literary essay, with a dictionary in one hand, a pencil for parsing in the other, our

eyes and minds closed to the evils sought to be cured by the great remedial act, but riveted, rather, on the mere words themselves. Such, indeed, was the technique of statutory interpretation employed by counsel in the case noted by Zechariah Chafee, Jr., in his article on "The Disorderly Conduct of Words" in 41 Col L Rev 381. In this case a doctor charged with procuring an abortion defended upon the ground that the statute of frauds protected him. There was no writing between doctor and patient and, as anyone who can read well knows, one cannot be called upon to answer for the debt, default, or "miscarriage of another" unless there is an instrument in writing. So says the statute, and all we have to do is follow its specific command.

Likewise, here, the statute speaks of a maximum and of successive payments. And so also here, if we approach our solemn task as a lexicographer, we might well conclude that maximum as here used means maximum in the same literal, dictionary, sense that miscarriage meant miscarriage in the case described by Chafee, and wash our hands of the whole business. So interpreted we would conclude, as we said heretofore, that a second loss, a loss to one already completely disabled, or to an amputee, drawing compensation therefor, is free. It is inflicted without liability and is endured without recompense. Why? Because the unfortunate workman was already hurt when he got it. Let such claimants be-gone. Let them petition the legislature.

The somber doctrine that a compensation act should be "interpreted" by us to say (which it does not) that a workman with a prior injury is somehow or other less deserving of protection than one in full vigor I have saluted in past opinions (*e.g., Sheppard* v. *Michigan National Bank,* 348 Mich 577, 582) and shall address again, so long as the creed has currency and fallacy has adherents. I reject such technique

of interpretation today as I have heretofore because, it utterly ignores the context in which the questioned words are found, it is blind to the evils sought to be remedied by the act, and, most important, that it is a cavalier disregard of the manifest intent of the legislature found within the 4 corners of the statute itself.

The recent Florida case of *Dennis* v. *Brown,* 93 So2d 584, indicates, with other like cases, that the view of the supreme court of the United States in the *Alaska Industrial Board Case, supra,* is not unique but in harmony with the current of modern authority. In the *Dennis Case, supra,* the claimant, who had previously been compensated for permanent total disability, asserted a claim for additional benefits arising from an additional loss suffered. In holding him to be entitled to such compensation, the court held, in part, as follows (p 588):

"Finally, Larson comments, concerning an over-all dollar limit on benefits:

" 'If the maximum is to have any effect, it must be understood to set a limit on the allowance that can be made for a specific damaging result to a particular member manifested at a particular time. As noted above, after time healing and training have done their work, an injured member may again be susceptible to injury for which maximum compensation is appropriate.'

"It is our view that the foregoing comments lend direct support to our finding in this case. Where necessary the author's comments are susceptible to an extension applicable to the circumstances of the present case. We are of the opinion that an employee, although previously adjudicated permanently and totally disabled and fully compensated therefor, may thereafter acquire a wage-earning capacity. If he suffers a subsequent injury which deprives him of such newly acquired wage-earning capacity, he may be entitled to compensation for such loss."

The opposing view, finally concluded the court, "is, in our opinion, contrary to what we believe to have been the legislature's intent, and is contrary to common sense." We agree and we so hold.

Upon the issue before us, a single, powerful humane consideration underlies the injury provisions of the workmen's compensation acts. It finds similar expression, as we have seen, in the highest courts of the English-speaking world: That a man's body and a man's life comprise a functional and spiritual unit, having value to our society as well as to him, incapable of dismemberment into separate packages, as on the counter of a market, each isolated and unrelated package with its exclusive price tag. We have, rather, an inter-relation and inter-dependence of skills and personal characteristics. Thus, the punch press in the plant may sever the hand but life goes on, the needs of the family continue, and work of some kind must be had. When the spirit so replaces the sinew does the law say that the remaining capacity to work, if still further diminished by industrial accident, is uncompensable? If another loss is suffered, if there is injury to the remaining hand itself, does this already-disabled worker, then being compensated for the prior loss, forfeit the award that his able-bodied brother at the next machine would obtain as a matter of course? We here hold not. Upon the facts before us, it is clear that the payment of the schedule award for a second separate and distinct injury does not offend any maximum prescribed for a prior injury. There have been 2 losses. The maximum prescribed for the first injury relates only to the amount to be paid in respect of the first accident. The second is not to be inflicted free of liability and suffered without recompense. The law requires 2 awards.

Affirmed. Costs to appellee.

Black, Voelker, and Kavanagh, JJ., concurred with Smith, J.

Carr, J. (*for modification*). This case involves the interpretation of certain provisions of the workmen's compensation act of the State.* There is no dispute as to the facts found by the workmen's compensation appeal board. On December 15, 1954, plaintiff was employed by the defendant company as a gasoline service station attendant. His weekly wage was $97.85. On said date he sustained an accidental injury resulting in a fracture of his left leg. Compensation was paid voluntarily at the rate of $40 per week in accordance with the maximum allowable under section 9, part 2 (CLS 1954, § 412.9 [Stat Ann 1950 Rev § 17.159, as amended by PA 1954, No 175]) of the compensation act. The payments were continued until October 6, 1955, at which time plaintiff was employed by the Alma Piston Ring Company. Notice of termination of payments was given by defendant as of the date mentioned.

On October 28, 1955, plaintiff was involved in another accident in which he sustained the loss of 4 fingers. Compensation was paid to him by his then employer, or its insurance carrier, in accordance with part 2, § 10, of the statute (CLS 1954, § 412.10 [Stat Ann 1950 Rev § 17.160, as amended by PA 1954, No 175]). Such compensation was fixed at the sum of $42 per week, the maximum payable under the statute, for a total period of 109 weeks from and after October 29, 1955. The payments were made for a total of 33 weeks and then a lump-sum settlement was effected for the balance of the period, the aggregate amount received being, as indicated by the record, the sum of $4,040.32.

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1950 Rev § 17.141 *et seq.*, as amended]).

Following the making of such settlement plaintiff filed application for hearing and adjustment of claim against the Cutler Oil Company, based on the injury of December 15, 1954. Following hearing before a referee of the department an award was made in plaintiff's favor including compensation during the period covered by the award against the Alma Piston Ring Company for the period of 109 weeks following said date. The appeal board, one member dissenting, upheld the holding of the referee, allowing compensation at the rate of $21.18 per week for the period in question, and until the further order of the board, said amount being determined, as provided by the statute, on the basis of 2/3 of the difference between the weekly wage of plaintiff in his employment by the Cutler Oil Company and his subsequent earnings while working for the second employer. On leave granted, defendant Cutler Oil Company and its insurance carrier have appealed, claiming, in substance, that the allowance of such weekly payment during the period covered by the award against the Alma Piston Ring Company for the loss of specific members at the statutory maximum rate of $42 per week was not authorized under the statute.

As above indicated, the sections of the statute cited were amended by PA 1954, No 175. We are not concerned in this case with subsequent amendments. Section 9 made provision for the compensation of incapacity for work resulting from injury when total at the sum of 2/3 of the average weekly wage, with a maximum varying from $32 per week if the injured employee had no dependents to $42 per week if he had 5 or more dependents. Section 10, relating to partial incapacity for work resulting from injury compensable under the statute, including payments for specific losses in accordance with a schedule set forth in the section, fixed the same maximum. It thus appears that the award at the rate of $42 per week against

the Alma Piston Ring Company was based on the maximum payment that might have been made to plaintiff under either of the sections in question. The further allowance of $21.18 per week for said period against the defendants in the instant proceeding, based on application made subsequent to the award for the specific loss of plaintiff's fingers, results in allowing plaintiff compensation for the period in question in excess of the maximum fixed for total disability under section 9 of part 2 of the act and, also, the like maximum specified in section 10. The question before us is whether the statute as enacted by the legislature contemplates such a result.

In determining the matter of legislative intent primary consideration must be given to the language used in the enactment and to the purpose expressed therein. There is no ambiguity in either of the sections cited. Maximum payments are fixed in definite terms. It is apparent, also, that incapacity for work may not be more than total. In view of the fact that the legislature has seen fit to prescribe a maximum amount that an employee may receive by way of compensation for incapacity to labor, the conclusion may not be avoided that such provision is controlling. It is also apparent that under section 10 of part 2 payments for specific losses as set forth in the schedule rest on the theory that they constitute compensation for loss of ability to labor for the periods specified. The following provision of the statute clearly indicates the legislative intent in this regard:

"In cases included by the following schedule, the disability in each such case shall be deemed to continue for the period specified, and the compensation so paid for such injury shall be as specified therein."

Bearing in mind that the purpose of the act, as indicated by its title and emphasized in its various provisions, is the payment of compensation to an

injured employee because of incapacity to labor resulting from an injury, it is clear that the legislature intended that payments for specific losses in accordance with the schedule set forth in section 10 of part 2 shall rest on such basis. In order to carry out its purpose, the period of disability in the event of the loss of any member is definitely fixed rather than being left to uncertainty. Significant also is the fact that compensation is not in an arbitrary amount, but is to be determined on the basis of the wages earned by the employee. Any suggestion that plaintiff's compensation for the loss of his fingers was fixed without respect to his earning capacity as established by the wages received, and is not to be regarded as compensation for the loss, partially or wholly, of such capacity, is untenable in view of the specific language of the legislature construed in the light of the basic purpose of the act.

Also significant is the statement incorporated in section 10, following the schedule pertaining to specific losses, as follows:

"The amounts specified in this cause are all subject to the same limitations as to maximum and minimum as above stated. In case of the loss of 1 member while compensation is being paid for the loss of another member, compensation shall be paid for the loss of the second member for the period herein provided, payments to begin at the conclusion of the payments for the first member."

Thus the legislature specifically declared the duty to observe the limitations as to maximum and minimum payments. To obviate payments in excess of such maximum in the event of 1 specific loss being followed by another while compensation for the first is still being paid, the compensation allowable for the second disability is postponed until the completion of prior awarded payments. A like

method was observed in fixing the aggregate number of weeks for which plaintiff should receive compensation for the loss of his fingers.

The theory of the law followed by the majority of the appeal board in the instant case might under some circumstances lead to the payment of compensation in excess of wages lost as a result of a disability sustained through injury. Such a situation arose in *State Compensation Insurance Fund* v. *Industrial Accident Commission*, 43 Cal App 2d 233 (110 P2d 510). There the employee suffered an accidental injury, resulting in total temporary disability. His weekly earnings at the time were $34.43, and compensation was awarded him at the rate of $21.27 for a specified period. Subsequently he filed application for total temporary disability alleged to have resulted from inhaling carbon monoxide fumes. The disability was established to the satisfaction of the industrial accident commission, and he was awarded payments beginning immediately after the inception of the compensation payments for the other injury, the award being based on the same weekly wage. This resulted in his being allowed $42.53 per week while his wages, had he not suffered disability, would have been $34.43 per week. The court permitted the first award made to stand, and in a companion decision* held that the compensation in the second case should have been awarded to begin at the time of recovery from the disability resulting from the first accident. In support of its conclusion the California court cited prior decisions in that State, quoting with approval, with reference to the theory underlying workmen's compensation laws, from the opinion of the supreme court of the State in *Western Indemnity Co.* v. *Pillsbury,* 170 Cal 686, 693 (151 P 398), as follows:

---

* *State Compensation Insurance Fund* v. *Industrial Accident Commission,* 43 Cal App 2d 236 (110 P2d 512).—Reporter.

" 'It may be noted that under the particular scheme embodied in this act, the loss resulting from accidental injuries is not imposed upon the employer alone. The scale of compensation fixed by section 15 allows to the employee, in addition to medical and surgical expenses, an indemnity based upon his loss of earnings, but this indemnity covers not the whole, but only a part or a percentage of such loss. The risk of accidental injuries is thus shared by employer and employee.' "

In support of his conclusion that there is a difference between awards based on the loss of specified members and other awards made pursuant to the statute, Mr. Justice SMITH cites *Alaska Industrial Board* v. *Chugach Electric Association, Inc.*, 356 US 320 (78 S Ct 735, 2 L ed 2d 795). That case arose under the Alaska workmen's compensation act which provided that an employee totally and permanently disabled should be entitled to a lump-sum payment of $7,200 with an additional $900 for each child under the age of 18, the total payment not to exceed $9,-000.* The employee, Jenkins, received an award under this provision of the statute. Subsequently he made application for continuing benefits, alleging temporary disability. The board made an award in accordance with the application. Action was instituted in the district court to set aside the decision. The court reversed the board and the decision rendered was affirmed by the court of appeals. The supreme court interpreted the statute differently, pointing out that authorized lump-sum awards ignored wage losses, and that the employee in case of permanent and total disability became entitled thereto without reference to wages that he might receive after the award. Such a payment under the statute was characterized as an "arbitrary amount." The court further concluded that there might be a

---

* See provision of act set out in footnote, 356 US 321, 322.—REPORTER.

continuing ability to work and earn wages, thus creating a "factual basis for temporary disability awards."

A comparison of the Alaska act with that of Michigan reveals material differences. As above pointed out, the Michigan statute for specific awards provides compensation for disability based on the earnings of the employee prior to his injury. The provision as to maximum payments is, under the Michigan act, applicable to such awards. The issues involved in the construction of the Alaska act in the case cited were different than those in the case at bar. We are here confronted with specific statutory provisions indicating legislative intent not consistent with the purpose of the Alaska act as determined in the case cited. In the final analysis each controversy of the nature here involved must be decided in the light of pertinent provisions of the governing statute.

The specific question in the case at bar was involved in *O'Brien v. Albert A. Albrecht Co.*, 206 Mich 101 (6 ALR 1257). There the plaintiff, a carpenter, was injured while working for an employer other than the defendant. An agreement for compensation was made which was subsequently reduced in amount. At a later time plaintiff, while working for defendant, suffered another accidental injury for which he was awarded compensation on the basis of total disability, in the maximum amount fixed by the statute at that time. On appeal the second award was vacated and the case remanded, the Court, speaking through Mr. Justice Fellows, saying, in part (p 106):

"It must be obvious that a man cannot be more than totally disabled. It should be equally obvious that he cannot receive compensation for more than total disability. Our statute does not provide for concurrent compensation. It fixes a maximum for total disability of $10 per week, and it cannot exceed

that sum whether it is paid by one employer or by several."

The *O'Brien Case* was cited with approval in *Wolanin* v. *Chrysler Corp.*, 304 Mich 164, 172, in which it was pointed out in the opinion of the Court that:

"Compensation cannot exceed the maximum provided by the act."

In *Hebert* v. *Ford Motor Co.*, 285 Mich 607, plaintiff suffered an accidental injury while employed as a skilled laborer. Under statutory provisions in force at the time he was entitled to compensation for total disability because unable to follow the line of employment in which he was engaged. Such an award was made. Subsequently he was employed in a capacity not involving the performance of skilled labor. While so engaged he was injured in an accident and sought compensation on the basis of total disability. This Court, applying pertinent statutory provisions then in effect, concluded that the fact that plaintiff had been compensated as a result of the first injury which prevented him from continuing in his skilled employment did not bar him from receiving compensation for the subsequent injury by which his earning capacity was totally destroyed. The question determined was obviously of a different nature than the controlling issue in the case at bar. The *Hebert Case* is distinguishable on the facts involved, and the same comment may be made with reference to *MacDonald* v. *Great Lakes Steel Corp.*, 268 Mich 591.

The decision in *Ingram* v. *W. J. Rainey, Inc.*, 127 Pa Super 481 (193 A 335), was based on provisions of the Pennsylvania workmen's compensation act analogous to the statutory provisions involved in the instant case. There the plaintiff sustained an injury while in defendant's employ, resulting in total disability. Ap-

parently there was no agreement for the payment of workmen's compensation, nor did the plaintiff seek such remedy until after he had undertaken to return to work and had met with an accident resulting in the loss of 2 of his fingers. An agreement was made by which plaintiff was to receive compensation for the loss of the fingers at the rate of $15 per week for a period of 35 weeks. Thereafter plaintiff made application for the payment of compensation for his first injury, and received an award at the rate of $15 per week therefor. The payments so specified overlapped those made under the agreement for compensation for the specific losses. The maximum under the statute for total disability was the sum of $15 per week. It was held that in view of such limitation plaintiff was not entitled to draw compensation at the rate of $30 per week during the overlapping period under the agreement for compensation for loss of his fingers and the award based on the first injury.

The *Ingram Case* was cited with approval and followed in *Melfi* v. *Dick Construction Company*, 148 Pa Super 406. The holding of the court therein was summarized in the syllabi as follows:

"1. An employee who suffers the loss of 2 or more members in the same accident in the course of his employment and receives as compensation, under section 306(c), for the aggregate of the prescribed periods, the maximum compensation fixed by the statute, and who is thereafter but within the period of compensation under section 306(c), totally disabled in another accident, is not entitled to additional compensation for total disability for the time during which the period of payment under section 306(c) and the period of total disability coincide.

"2. In a workmen's compensation case, in which it appeared that, while the claimant was being paid compensation at the rate of $18 per week, for a 165-

week period, for the loss of fingers of his right hand, under section 306(c), he returned to work and broke his ankle, totally disabling him for a period of more than 8 weeks, it was held that claimant was not entitled to additional compensation, under section 306 (a), since the period of disability coincided with the period of payment under section 306(c) and he was already receiving the maximum weekly amount provided for by the workmen's compensation act."

Of like import is the decision of the Kentucky supreme court in *Dunn* v. *Eaton,* 233 Ky 699 (26 SW2d 513), where it was held that awards made for the loss of a limb and for other injuries could not exceed in the aggregate the maximum rate per week fixed by the workmen's compensation law of the State.

Under the specific wording of the Michigan act, the pertinent provisions of which are above considered, the dissenting member of the appeal board was correct in his conclusion that during the period of 109 weeks covered by the award to plaintiff of compensation for disability resulting from loss of his fingers, such award being based on the maximum allowed for either total or partial disability, plaintiff was not entitled to additional compensation from the defendant Culver Oil Company, or its insurer. It may be noted that at the time of the hearing of the matter before the referee plaintiff was employed by the Alma Block Company as a truck driver at a rate of $1.65 per hour. Whether plaintiff will be entitled to receive from defendants here further compensation following the expiration of the period fixed for the payment of the specific loss award is a matter to be determined, if plaintiff claims that he is so entitled, in another proceeding. The present case should be remanded to the workmen's compensation appeal board with directions to modify the award in accordance herewith. Inasmuch as the case involves a ques-

tion of statutory interpretation, no costs are allowed.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

EDWARDS, J. (*for modification*). This statute is remedial in nature and, where ambiguous, should have a liberal interpretation in accordance with its stated purposes. See *Van Dorpel* v. *Haven-Busch Co.*, 350 Mich 135. Further, the result reached by Mr. Justice SMITH in this case is one which cannot offend the sensibilities of anyone who dwells long upon the plight of this twice-injured plaintiff.

Unfortunately, the applicable statutory language seems to me to constitute a specific contrary command. Both awards are founded upon the same section of the act, CLS 1954, § 412.10 (Stat Ann 1955 Cum Supp §17.160, as amended by PA 1954, No 175). The last sentence in this section reads:

"The amounts specified in this cause are all subject to the same limitations as to maximum and minimum as above stated. In case of the loss of 1 member while compensation is being paid for the loss of another member, compensation shall be paid for the loss of the second member for the period herein provided, payments to begin at the conclusion of the payments for the first member."

I agree, of course, that there are separate and distinct bases for the 2 awards considered in this case. The language quoted above, however, seems clearly to apply the maximums stated in the section to both awards, and to suggest that they apply consecutively but not concurrently.

The remedy lies in legislative amendment.

The case should be remanded for entry of an award consistent with this opinion. No costs. Construction of a statute is involved.