Barbara **THEODORE** and Stanley J.
McCutcheon, Appellants,

v.

**ZURICH GENERAL ACCIDENT AND LIA-
BILITY INSURANCE COMPANY,**
Ltd., Appellee.

No. 43.

Supreme Court of Alaska.

May 23, 1961.

Rehearing Denied July 7, 1961.

Stanley J. McCutcheon and Robert E. Hammond, Anchorage, for appellants.

Raymond E. Plummer, Plummer & Delaney, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

The two main questions here are: (1) whether this court has jurisdiction of this

appeal, and (2) whether an insurance company is bound by a judgment against its insured where it had refused to defend the action in which the judgment was rendered on the ground that the claim involved was not covered by the policy of insurance.

Arthur Theodore was employed by the Cordova Cold Storage Company as a tallyman on a fish scow. During a storm on August 31, 1955 he was swept overboard and drowned while the scow was anchored about three-fourths of a mile from shore. Shortly thereafter his mother, Barbara Theodore, commenced an action against Cordova under the Jones Act[1] for damages on account of her son's death.

Cordova was insured by Zurich against liability for injury to or death of its employees. Notice of the action was given to Zurich, but it refused to defend. Its excuse was that the exclusive remedy in the circumstances of this case was under the Alaska Workmen's Compensation Act, A.C.L.A.1949, § 43-3-1 et seq., and that there was no liability under the policy for wrongful death. Zurich did not deny liability for death benefits prescribed by the compensation statute. Cordova then employed counsel to defend the action, but before the case was tried the parties reached a settlement. An instrument entitled "Confession of Judgment and Settlement Agreement" was filed, and in accordance therewith the district court entered judgment in favor of Barbara Theodore in the sum of $20,000.

Thereafter Barbara Theodore and Stanley J. McCutcheon (an assignee of a portion of the judgment) commenced an action on the judgment against Zurich. The latter raised various defenses—the principal ones being that the risk or loss upon which the judgment was based was not covered by the insurance policy, and that Cordova had violated the policy by assuming a liability without the consent of the insurer. The district court entered summary judgment in favor of Zurich, finding that the confession of judgment and settlement agreement was a "liability assumed by the insured under any contract or agreement", an exclusion under the insurance policy. This appeal followed.

### 1. *Jurisdiction.*

■■■ Alaska became a state on January 3, 1959.[2] On February 20, 1960 the newly created United States District Court for the District of Alaska assumed its exclusively federal jurisdiction; the interim district court for the Territory of Alaska, which had exercised both federal and state jurisdiction, went out of existence; and the state courts assumed their exclusive jurisdiction.[3] At that time all causes which had been determined or were pending in the interim district court on January 3, 1959, and which were "of such a nature as to be within the jurisdiction of a district court of the United States", were to be transferred to the new United States District Court for final disposition and enforcement. All other causes were to be transferred to the appropriate state courts.[4]

Zurich asserts that this action was of such a nature as to be within the original jurisdiction of the United States District Court because of diversity of citizenship[5], and that it was mandatory under Section 15 of the Statehood Act that the case be transferred to the federal court for final disposition. It contends that any appeal ought

1. Merchant Marine Act of 1920, § 33, 41 Stat. 1007, 46 U.S.C.A. § 688 (1958). This act provides that in case of the death of a seaman as a result of personal injury in the course of his employment, his personal representative may maintain an action for damages at law with the right of trial by jury.

2. Exec. Proclamation No. 3269, 24 Fed. Reg. 81 (1959); Alaska Statehood Act, § 8(c), 72 Stat. 344 (1958), 48 U.S.C.A. preceding section 21.

3. Exec. Order No. 10,867, 25 Fed.Reg. 1584 (1960), 28 U.S.C.A. § 81A note; Alaska Statehood Act, § 18, 72 Stat. 350 (1958), 48 U.S.C.A. preceding section 21.

4. Alaska Statehood Act, § 15, 72 Stat. 349 (1958), 48 U.S.C.A. preceding section 21.

5. 62 Stat. 930 (1948) as amended, 28 U.S.C.A. § 1332 (1959).

to have been táken to the United States Court of Appeals for the Ninth Circuit, rather than to the Supreme Court of Alaska.

Suit was brought against Zurich on June 2, 1959; and since neither the state courts nor the United States District Court for the District of Alaska were then organized, the action was properly commenced in the interim district court.[6] The case was determined in that court by judgment entered February 19, 1960. It was pending in that court from that time until the following day when the state courts assumed their jurisdiction, because the time for appropriate motions or appeal had not yet expired. Section 16 of the Statehood Act provided that jurisdiction of all cases "pending or determined" in the transitional court and not transferred to the newly created federal court should devolve upon and be exercised by the courts of original jurisdiction created by the state.[7] This was one of those cases. It was not transferred to the United States District Court; no petition for removal was filed.[8] Hence, by virtue of Section 16 of the Statehood Act, Article IV of the Alaska constitution [9], and a 1959 statute pertaining to the state court system [10], appeal was properly taken to this court.

6. Hobbs v. State of Alaska, Alaska 1961, 359 P.2d 956.

7. Alaska Statehood Act, § 16, 72 Stat. 350 (1958), 48 U.S.C.A. preceding section 21.

8. 62 Stat. 939, amended May 24, 1949, ch. 139, § 83, 63 Stat. 101, 28 U.S.C.A. § 1446 (1950).

9. Section 2 of this article provides that "The supreme court shall be the highest court of the State, with final appellate jurisdiction."

10. S.L.A.1959, ch. 50, 1, provides that "The supreme court has final appellate jurisdiction in all actions and proceedings", and that "Appeals to the supreme court shall be a matter of right, * *."

11. Supra, note 5.

12. Kline v. Burke Const. Co., 1922, 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226, 232. Cf. Plaquemines Tropical Fruit

It is true, as Zurich states, this was a diversity case, since the matter in controversy exceeded the sum of $10,000 and was between citizens of different states; and that the federal court, therefore, would have had original jurisdiction of the action.[11] However, federal jurisdiction is not exclusive; state courts also have jurisdiction over cases between parties having diverse citizenship.[12] This court, therefore, has the power to review and pass upon the judgment appealed from.

2. *Binding Effect of Judgment.*

The insurance agreement between Zurich and Cordova Cold Storage Company was a workmen's compensation and employer's liability policy. If Cordova were liable for workmen's compensation benefits, then this was to be the exclusive coverage and the employer's liability coverage was inapplicable.

Barbara Theodore asserted no claim under the compensation act. She brought suit against Cordova under the Jones Act— the basis of her claim for damages being that her son's employer was negligent in failing to provide a safe and seaworthy vessel.[13] Zurich's refusal to defend the action was based on its contention that the compensation act furnished the exclusive remedy,[14] and that the employer's liability

Co. v. Henderson, 1898, 170 U.S. 511, 18 S.Ct. 685, 42 L.Ed. 1126.

13. Although the complaint is not artfully drawn, it is sufficient to raise the issue of negligence under the Jones Act. Cf. Rouchleau v. Silva, 1950, 35 Cal.2d 355, 217 P.2d 929, 930–931; Brown v. Western Ry. of Alabama, 1949, 338 U.S. 294, 298, 70 S.Ct. 105, 94 L.Ed. 100, 103. The range of negligence under the Jones Act is wide enough to cover a negligent breach of duty to provide a seaworthy vessel. See Gilmore and Black, The Law of Admiralty, § 6–37 at 313 (1957).

14. Section 43–3–10 A.C.L.A.1949 provided in part that "The right to compensation for an injury and the remedy therefor granted by this Act shall be in lieu of all rights and remedies as to such injury now existing either at common law or otherwise, and no rights or remedies, except those provided for by this . Act,

coverage of the policy was thus inapplicable. It contends that its action was justifiable—the claim being outside the scope of the policy coverage—and that the judgment entered against Cordova did not preclude Zurich from disclaiming liability and litigating that issue in this subsequent action.

■ Zurich promised its insured to defend any suit "alleging" bodily injury or death under the employer's liability coverage in the policy, even if such suit were "groundless, false, or fraudulent." This language means that the obligation to defend exists when the injured party asserts a claim which, as a claim, is for a loss covered by the policy. It is the allegation made in the complaint that controls. If it comprehends an injury that may be within the policy, then the promise to defend includes it. The promise is not contingent upon the allegation being true. It may not be. But the burden of establishing this—in showing that the suit is "groundless"—is one which Zurich agreed to assume.[15]

■ Zurich was not justified in refusing to defend because, in its opinion, decedent's work, although maritime in nature, was of mere local concern, and that the exclusive features of the Alaska Workmen's Compensation Act therefore abrogated the right to resort to maritime law.[16] We need not decide that issue because the question of whether Arthur Theodore was in fact a "seaman", within the meaning of the Jones Act, is not relevant. What is relevant, and the whole point in this case, is that Barbara Theodore's complaint against Cordova stated a claim for relief under the Jones Act;

it alleges facts which, if proved, would have supported a recovery under that portion of the policy relating to employer's liability. Under the unambiguous terms of the insurance agreement, Zurich then had the duty to proceed in the defense of the suit—at least to the point of establishing, if it could, that the liability upon which the plaintiff was relying was in fact not covered by the policy, and not merely that it might not be.[17]

■ By its express terms the policy did not apply to "liability assumed by the insured under any contract or agreement." If this provision is relevant to the facts of this case, it means nothing more than that the insured should not have settled the suit against it without the consent of the insurer. But Zurich had unjustifiably repudiated its promise to defend the suit, and thus put to an end its right to demand compliance by the insured with other terms of the agreement. Cordova was faced with a $1,000,000 lawsuit on a claim ostensibly within the terms of the insurance policy, and Zurich had refused to take any part in the litigation. Under the circumstances, Cordova was justified in doing what it considered best to protect its interests. It had the right to do anything in defense of the suit that Zurich might have done, including making a settlement of the case which we must assume was a reasonable one.[18] The $20,000 judgment that Cordova thus became obligated to pay was not a gratuity; for that which is paid in a prudent settlement of an action for damages is something which the insured has "become legally obligated to pay" within the meaning of the insurance

shall accrue to employees entitled to compensation under this Act while it is in effect; nor shall any right or remedy, except those provided for by this Act accrue to the personal or legal representative, dependents, beneficiaries under this Act, or next of kin of such employee; * * *."

15. Lee v. Aetna Cas. & Sur. Co., 2 Cir., 1949, 178 F.2d 750, 753; Zeitz v. Zurich General Accident & Liability Ins. Co., Ltd., 1949, 165 Pa.Super. 295, 67 A.2d 742, 745–746; Bloom-Rosenblum-

Kline Co. v. Union Indem. Co., 1929, 121 Ohio St. 220, 167 N.E. 884, 886.

16. See Millers' Indemnity Underwriters v. Braud, 1926, 270 U.S. 59, 64–65, 46 S. Ct. 194, 70 L.Ed. 470, 472.

17. Lee v. Aetna Cas. & Sur. Co., supra note 15, 178 F.2d at pages 752–753.

18. St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 1906, 201 U.S. 173, 181–182, 26 S.Ct. 400, 50 L.Ed. 712, 716–717; Independent Milk & Cream Co. v. Aetna Life Ins. Co., 1923, 68 Mont. 152, 216 P. 1109, 1110.

policy.[19] Zurich became liable for the amount of the judgment because this was the natural consequence of its breach of the insurance contract.[20] The judgment creditor, Barbara Theodore, had the right to sue Zurich for that amount because the policy was one of insurance against liability which Cordova became legally obligated to pay, as distinguished from one of indemnity against actual loss suffered by the insured.[21]

■ If Zurich had defended the action against its insured and had prevailed in its contention that the employer's liability coverage was inapplicable, this would necessarily have resulted in a judgment in favor of the insured, which was also to the benefit of Zurich. The interests of insurer and insured in the defense of the suit were in no way inconsistent or conflicting; in fact, they were identical.[22] There is no reason, then, for placing a limitation on the duty to defend.[23] Since Zurich had the obligation to defend and refused to do so, the judgment became binding against it both as to the extent and existence of the liability. Therefore, it did not have the right, when

appellants brought this suit on the judgment, to show that the death of Arthur Theodore was not covered by the employer's liability section of the policy.[24] The district court was in error in entering summary judgment for Zurich.

■ In support of the decision below, Zurich also argues that the judgment in the first action was void because it was instituted and prosecuted by Barbara Theodore in her individual capacity, and not as the personal representative of her deceased son.[25] However, she was appointed administratrix of her son's estate while her action against Cordova was pending, prior to the entry of judgment, and she was entitled to have amended her complaint to show that she was actually suing in her capacity as personal representative.[26] Such an amendment would not have raised an issue as to a liability not within the theory of the case as shown by her complaint, and therefore the failure to amend could not have affected the result of the litigation. In such a case we may consider the necessary amendment as having been made to support the judgment.[27]

19. St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., supra note 18, 201 U.S. at page 182, 26 S.Ct. at page 403, 50 L.Ed. at page 716; Butler Bros. v. American Fidelity Co., 1913, 120 Minn. 157, 139 N.W. 355, 357, 44 L.R.A., N.S., 609.

20. St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., supra note 18; Independent Milk & Cream Co. v. Aetna Life Ins Co., supra note 18, 216 P. at page 1110; Annotation, 49 A.L.R. 2d 694, 718 (1956).

21. Taylor v. Knox County Bd. of Education, 1942, 292 Ky. 767, 167 S.W.2d 700, 702, 145 A.L.R. 1333; United States Fidelity & Guaranty Co. v. Williams, 1925, 148 Md. 289, 129 A. 660, 663–664; 5 Couch, Insurance, § 1175d, at 4186 (1929).

22. Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793, 801, certiorari denied Beverage v. Farm Bureau Mut. Ins. Co., 1950, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339.

23. Cf. 1 Freeman, Judgments § 448, at 982 (5th ed. 1925); Farm Bureau Mut. Auto. Ins. Co. v. Hammer, supra note 22, 177 F.2d at page 801.

24. Miller v. United States Fid. & Cas. Co., 1935, 291 Mass. 445, 197 N.E. 75, 77; 1 Freeman, Judgments § 447 at 978 (5th ed. 1925); Restatement, Judgments § 107(a) (1942).

25. The Jones Act provides that the personal representative of a seaman "may maintain an action for damages." 46 U.S.C.A. § 688 (1958). This has been construed to mean that only the personal representative, and not the beneficiary, has the right to sue. Civil v. Waterman S.S. Corp., 2 Cir., 1954, 217 F.2d 94, 98; O'Neill v. Cunard White Star Ltd., D.C. S.D.N.Y.1946, 69 F.Supp. 943, 945, certiorari denied 1947, 332 U.S. 773, 68 S. Ct. 56, 92 L.Ed. 358.

26. Missouri, Kansas & Texas Ry. Co. v. Wulf, 1913, 226 U.S. 570, 575–577, 33 S.Ct. 135, 57 L.Ed. 355, 363.

27. Shelley v. Union Oil Co. of California, 9 Cir., 1953, 203 F.2d 808, 809, 14 Alas-

■ The final contention made by Zurich is that service of process upon it in this action was insufficient because not in compliance with statutory requirements. Insurance law provides with respect to a foreign insurance company authorized to transact business in Alaska that service of process on the Commissioner of Insurance shall be valid service upon the company.[28] Mistakenly believing that Zurich had not obtained the necessary certificate of authority, the appellants did not have the summons and complaint served upon the Commissioner of Insurance, but instead, had service made on the clerk of the district court.[29] This asserted defect in the service of the summons was raised as a defense in Zurich's answer to appellants' complaint.

If the service had not been legally effected, the court would not have had jurisdiction over the person of Zurich. But the court granted Zurich's motion for summary judgment and made a binding adjudication on the merits of the case in its favor. This could be legally done only through the exercise of the court's jurisdiction over the parties. Hence the court's action must be construed as a decision that jurisdiction over the person of Zurich was not lacking. If Zurich had felt that that decision was erroneous, it might have taken a cross-appeal to this court. But it failed to do so, and it thus waived its objection that service of process was improper or insufficient.[30]

The judgment of the district court is reversed, and the case is remanded to the Superior Court, Third District, with directions that judgment be entered for the appellants.

---

ka 287, 290; Ruud v. American Packing & Provision Co., 9 Cir., 1949, 177 F.2d 538, 541; Decker v. Korth, 10 Cir., 1955, 219 F.2d 732, 739.

28. Section 42–1–24 A.C.L.A.1949.

29. This is the authorized method of substituted service of process on a foreign corporation which has not appointed a statutory agent in Alaska upon whom service can be made. See § 55–4–6 A.C.L.A.1949.

30. Western Life Indemnity of Illinois Co. v. Rupp, 1914, 235 U.S. 261, 271, 35 S. Ct. 37, 59 L.Ed. 220, 224. See also Alaska Industrial Bd. v. Chugach Elec. Ass'n, 1950, 356 U.S. 320, 324–325, 78 S. Ct. 735, 2 L.Ed.2d 795, 798, 17 Alaska 575, 579–580.