106 N.J. Super. 393 (1969)
256 A.2d 57
AMERICAN LEGION TRI-COUNTY MEMORIAL HOSPITAL, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1969.
Decided July 15, 1969.
*395 Before Judges SULLIVAN, FOLEY and LEWIS.
Mr. Marvin Sachs argued the cause for appellant (Messrs. Feuerstein & Sachs, attorneys; Mr. Allan Maitlin, on the brief).
Mr. Henry M. Grosman argued the cause for respondent (Messrs. Grosman and Grosman, attorneys; Mr. Marc B. Grosman, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment in plaintiff's favor in the amount of $6,535 plus interest.
This is an action on a "Comprehensive Hospital Liability Policy" issued by defendant to plaintiff in September 1963; it remained in full force and effect during all of the critical dates mentioned herein. The claim is for recovery of counsel fees and costs of defending against a suit by members of plaintiff's medical staff. The liability aspect of the case was submitted to the trial court on stipulated facts. The trial court in a letter opinion found liability. In a subsequent proceeding on the issue of damages plaintiff was awarded the amount aforesaid.
The case arose from a dispute between the hospital and certain members of its medical staff Their complaint was in two counts. The first count sought an injunction against the trustees' interference with the doctors' use of the hospital facilities; the second count sought compensatory and punitive damages. On October 22, 1963 a meeting took place *396 between the hospital's board of trustees and the dissident doctors. At that time the doctors made known their intention to attempt to oust the board of trustees and stated that counsel had been retained for that purpose. On the same day the board of trustees met in private and voted to suspend the doctors. The advisability of retaining an attorney was discussed and two of the trustees were authorized to engage counsel in the event of litigation with the doctors. A suspension notice was posted in the hospital on October 23, 1963. On October 25 the administrator of the hospital was served with a complaint in a suit by the doctors after he had refused the request of their attorney that the suspension notice be removed.
On the day the complaint was served, Woodruff English, Esq., of the firm of McCarter & English, was retained to represent the hospital and its board of trustees in defense of the pending action. The board confirmed the retention on November 2, 1963; the summons and complaint had already been turned over to English.
On November 6, 1963 the hospital notified defendant St. Paul of the doctors' suit and requested that it provide a defense in accordance with the insurance policy. Thereafter St. Paul agreed to defend the second count only. The entire action was eventually settled by a consent final judgment without the payment of any damages.
Subsequently the hospital brought the present action against St. Paul seeking reimbursement for counsel fees and costs incurred by it in defense of the doctors' suit, maintaining that the carrier was obligated to defend the entire law suit and that as a result of its failure to do so the hospital was compelled to defend at its own cost and expense.
The central, and we think determinative, question presented is whether the cause of action alleged in the doctors' complaint was within the coverage granted by the policy. The insuring clause of the policy provided that the insuror was obligated:
*397 "To pay all loss by reason of the liability imposed by law or contract upon the Insured * * * for damages (including counterclaims in suits brought by the Insured to collect fees or other charges) on account of injury, sickness or disease, including death at any time resulting therefrom, including damages allowed for loss of services and expenses suffered by any person or persons.
As respects insurance afforded by this Policy the Company shall (a) defend in his name and behalf any suit against the Insured alleging such damages, even if such suit is groundless, false or fraudulent." (Emphasis added.)
St. Paul contends that the policy unambiguously insures only against damages arising out of malpractice or negligence in connection with the functions of the hospital and its staff; that the action brought against the hospital clearly did not involve a malpractice or negligence situation and therefore did not fall within the coverage provided. The hospital, on the other hand, argues that the hospital's liability for damages on account of wrongful suspension was covered since the generic term "injury" as distinguished from "bodily injury" was employed in the insuring clause.
The principles of construction of an insurance policy are well established. When the terms of a policy are clear and unambiguous the court must enforce the contract as it finds it, e.g., Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 525 (1963); James v. Federal Insurance Co., 5 N.J. 21, 24 (1950); Kook v. American Sur. Co. of N.Y., 88 N.J. Super. 43, 52 (App. Div. 1965). If, however, the controlling language will support two meanings, the interpretation sustaining coverage must be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961); Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513-514 (1965). In evaluating the claim of an insured, consideration should be given as to whether alternative or more precise language, if used, would have put the matter beyond reasonable question. Mazzilli, at p. 7; Kook, at p. 51.
Applying these principles to the policy before us, we are firmly of the belief that both the insured and the insurer *398 understood and intended that the area of coverage staked out embraced only indemnity of the hospital for liability imposed by reason of negligence in performing its functions and malpractice, and did not comprehend any responsibility of the insurer to be answerable to the hospital for the manifold claims or actions which might be brought against it, resulting from hospital activity entirely foreign to the area we described.
All the language of the policy is directed toward "bodily" injuries which might occur as a result of hospital action or inaction. While in this case the word "bodily" does not appear in the policy, the word "injury" is combined with the words "sickness," "death," and "suffered." The context in which "injury" appears is so obvious that the word "bodily" would add nothing, and the absence of it in our judgment did not render the insuring clause ambiguous.
Another portion of the policy also indicates the nature of the risk covered. Under "Notice of Occurrence, Claim or Suit" the insured must give written notice containing particulars "sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses."
In these circumstances we conclude that since the cause of action pleaded in the doctors' complaint was not a risk insured against, St. Paul was not obliged to defend. See Danek v. Hommer, 28 N.J. Super. 68, 76-77 (App. Div. 1953), affirmed 15 N.J. 573 (1954).
The trial court did not pass directly upon the issue of whether the claim on which the doctors' suit was brought was a risk within the coverage of the policy. Rather, it held that the carrier having agreed to defend the damages count, was obligated to reimburse the hospital for expenses incurred in defense of the count by which an injunction was sought. While our courts have held that prejudice to the insured is not essential for a finding of estoppel to deny coverage, see O'Dowd v. U.S. Fidelity & Guaranty Co., 117 N.J.L. *399 444, 451-452 (E. & A. 1937); Goldmann v. Lumber Mutual Cas. Ins. Co. of N.Y., 30 N.J. Super. 281, 286 (Cty. Ct. 1954), the most recent pronouncement of our Supreme Court and the cases following are to the opposite effect.
In Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114 (1962) the Court stated:
"Where the policy does not cover the loss, it seems inaccurate to speak of a `waiver' since there is nothing to waive. Rather, the relevant thought is `estoppel,' and undoubtedly prejudice is an essential ingredient. * * * Most courts, however, find prejudice is inevitable when the insured is denied the right to maintain complete control of the defense of the damage action." (at p. 129)
Accord, Sneed v. Concord Ins. Co., 98 N.J. Super. 306 (App. Div. 1967); Goldberg v. Commercial Union Ins. Co. of N.Y., 78 N.J. Super. 183, 192 (App. Div. 1963); Capece v. Allstate Ins. Co., 86 N.J. Super. 462, 477 (Law Div. 1965).
The situation which arises most frequently is that in which the insurance company either investigates and/or defends the suit against the insured; after judgment is taken against the insured, the insurance company disclaims coverage. In this situation the courts either assume prejudice or they find it expressly; the theory is that it is futile to attempt to prove or disprove that the insured himself could have better investigated, negotiated or defended. Williams v. Bituminous Casualty Corp., 51 N.J. 146 (1968), relied upon by the trial court, is not to the contrary:
"A carrier's contractual right to defend presupposes that if the defense fails, the carrier will pay. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 127 (1962). Hence it is settled that a carrier is estopped to deny coverage of an action it undertakes to defend." (51 N.J., at p. 149)
The present case is in numerous ways distinguishable from what might be termed the standard estoppel to deny coverage situation. Firstly, the defense of the hospital *400 cannot be said to have been unsuccessful; no monetary judgment was entered. Secondly, the insurance company did not have exclusive control of the defense; the hospital's retained counsel apparently carried the burden. Thirdly, it is quite clear that the hospital did not desire to, nor did it, rely upon St. Paul for a defense; two weeks before notifying the insurance company it retained counsel with experience in the area of hospital administration.
What we have here is a situation in which the hospital wanted its own counsel and not that of St. Paul. If St. Paul was not obligated to defend under the terms of the policy, its partial participation in the defense changed nothing. This is not a case in which we do not know what would have happened had St. Paul not become involved; McCarter & English was also handling the defense, and conceivably, the same settlement would have been worked out even if St. Paul had disclaimed coverage from the very beginning.
Upon the undisputed facts of this case we hold that the insurer's partial intervention in this case did not prejudice the hospital and therefore that the carrier was not estopped from denying coverage when the present action was instituted.
Accordingly, we reverse, and remand for the entry of judgment in favor of the defendant.