C. Gordon HAINES, etc., et al.

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY.**

Civ. No. B–75–773.

United States District Court,
D. Maryland.

Feb. 17, 1977.

H. Emslie Parks and H. Richard Piet, Baltimore, Md., for plaintiffs.

Robert G. Schloerb and John W. McCullough, Chicago, Ill., John H. Mudd and Robert E. Scott, Jr., Baltimore, Md., for defendant.

## MEMORANDUM

BLAIR, District Judge.

■ This is a declaratory judgment action involving the construction of an insurance contract. At issue are the scope of the defendant insurance company's duty to defend and whether, in the event no duty is found, the company is estopped from denying coverage because of its actions or inactions. Haines and the other named plaintiffs are co-partners in a Baltimore law firm, Wright & Parks, the successor firm to Wright, Robertson & Dowell. This suit initially was brought in the Circuit Court for Baltimore County,[1] and was removed by the

1. Plaintiffs sought a declaratory judgment that: [1] a. The policy of insurance between Defendant and Plaintiffs requires the Defendant to provide a defense on behalf of Plaintiffs in the suit by the Securities and Exchange Commission.

b. In the alternative, having undertaken the defense of the Securities and Exchange Commission suit, Defendant owes Plaintiffs a duty to defend a suit with due diligence and good faith and may not arbitrarily withdraw

defendant, St. Paul Fire and Marine Insurance Company (St. Paul) pursuant to 28 U.S.C. § 1441. St. Paul is incorporated and has its principal place of business in Minnesota. Plaintiffs are all citizens of Maryland. Because complete diversity exists and the amount in controversy exceeds $10,000, this case was properly removed and this court has jurisdiction under 28 U.S.C. § 1332(a). Counsel have submitted a stipulated statement of facts and voluminous memoranda of law. Defendant has moved for summary judgment on all issues. Plaintiffs have moved for summary judgment on the coverage question alone, asserting that the estoppel issue is not proper for summary judgment.

This action arose out of a suit filed May 11, 1973 by the Securities and Exchange Commission. The complaint sought injunctive relief against twenty-five defendants including Haines and Wright, Robertson & Dowell. Plaintiffs were named as defendants as a result of their acting as attorneys for Valu Vend Credit Corporation, a registrant in a debenture offering which was the subject of the SEC action. Plaintiffs were not offerors or sellers of any of the securities referred to in the complaint and acted only as attorneys for others. Plaintiffs did not receive any monies as a direct consequence of the debenture offering. Plaintiffs' sole monetary gain from the transaction was the receipt of their attorneys' fees which the parties stipulate to be reasonable and appropriate. The SEC action was concluded July 8, 1975 following the entry of orders, consent decrees and stipulations.

During the pendency of the SEC litigation, the plaintiffs were the insured under policy 519JC3544 issued by St. Paul. The policy was countersigned in Maryland by St. Paul's authorized agent and the premiums were paid in Maryland.

On May 14, 1973, Wright, Robertson & Dowell requested that St. Paul provide a defense to the SEC action pursuant to the provisions of the policy. Although specifically reserving its rights under the policy, St. Paul agreed to undertake plaintiffs' defense. Haines acknowledged St. Paul's tender of a defense and reservation of rights. St. Paul has paid all expenses related to the plaintiffs' defense through April 23, 1975.

On April 23, 1975, St. Paul notified plaintiffs that it would no longer provide a defense in the SEC action. Since that date, plaintiffs incurred an additional $16,994.76 in legal fees and expenses which are the subject of this dispute.

■ The initial determination for the court is which law governs the construction of the contract. Neither party has raised the issue, conceding that Maryland law governs the contract. Under the stipulated facts, it is apparent that the last act necessary for the formation of the contract was performed in Maryland and therefore Maryland law controls. *Riviera Beach Volunteer Fire Company, Inc. v. Fidelity & Cas. Co.,* 388 F.Supp. 1114, 1119–20 (D.Md. 1975); *Grain Dealer Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 215 A.2d 467, 471 (1965).

■ The duty to defend is a contractual obligation and therefore it is necessary to examine the precise language of the contract to determine the scope of defendant's duty. *Riviera Beach, supra,* 388 F.Supp. at 1120; *see United States Fid. & Guar. Co. v. National Paving & Contracting Co.,* 228 Md. 40, 178 A.2d 872, 876–77 (1962). The coverage provision of the policy provides:

Coverage A—Professional Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out

its defense of the case to the prejudice of Plaintiffs.

c. In the alternative, that Defendant is obligated to pay the costs of defending the Securities and Exchange Commission suit through April 25, 1975, when the notice of withdrawal was received by Plaintiffs.

2. Such other and further relief as the case may require.

Subsequent to removal of this action, St. Paul paid the amount claimed in plaintiffs' relief 1c. The issues which are the subject of this Memorandum are paragraphs 1a and b.

of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable (the performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee or in any similar fiduciary capacity, but only to the extent for which in the usual attorney-client relationship the Insured would be legally responsible as attorney for a fiduciary) and the Company shall have the right and duty to defend in his name and behalf any suit against the Insured alleging damages, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the Company. The Company, however, shall not make settlement or compromise any claim or suit without the written consent of the Insured.

Under this provision, a condition precedent to the assumption by the defendant of a defense is the existence of a suit alleging damages against the insured. The SEC action was nominally for injunctive relief only.[2]

2. The forty-one page complaint contained three specific prayers for relief against Haines and Wright, Robertson & Dowell. The prayers were:

I.

Grant a final judgment of permanent injunction restraining and enjoining defendants ABC, VV, Lapides, Conn, Kane, VVCC, Hering, Botwinick, Mindes, Paken, Denson, SCC, Dixon, W.F.S., Sparks, Klein & Dahne, Klein, Dahne, Suburban, First Duso, Bahl, Haines, Wright, Robertson & Dowell, Robinson, and McLaughlin & Stern, Ballen and Miller, their agents, servants, employees, successors, assignees and those persons in active concert or participation with them from directly or indirectly, in connection with the purchase or sale of securities of defendants ABC or VVCC or any other issuer, making use of the means or instrumentalities of interstate commerce or of the mails to employ any device, scheme or artifice to defraud, to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

V.

Grant a final judgment of permanent injunction restraining and enjoining defendants ABC, VV, Lapides, Hering, Conn, Kane, VVCC, First Duso, Bahl, Wright, Robertson & Dowell, Haines, Robinson, and McLaughlin & Stern, Ballen and Miller, their agents, servants, employees, successors, assignees and those persons in active concert or participation with them, directly or indirectly from carrying or causing to be carried through the mails or in interstate commerce, for the purpose of sale or for delivery after sale, any security with respect to which a registration statement has been filed with the Commission, unless such security is accompanied or preceded by a prospectus that meets the requirements of subsection (a) of Section 10 of the Securities Act.

VII.

Grant a final judgment of permanent injunction restraining and enjoining defendants ABC, VV, Lapides, Conn, Kane, Hering, VVCC, Paken, Denson, WFS, Sparks, Suburban, First Duso, Bahl, Hines, Wright, Robertson & Dowell, Robinson and McLaughlin & Stern, Ballen and Miller, their agents, servants, employees, successors, assignees and those persons in active concert or participation with them from directly or indirectly in connection with the offer or sale of any security, making use of the means or instrumentalities of interstate commerce or the mails to make any representation:

(1) to the effect that the security is being offered or sold on an "all-or-none" basis, unless the security is part of an offering or distribution being made on the condition that all or a specified amount of the consideration paid for such security will be promptly refunded to the purchaser unless (A) all of the securities being offered are sold at a specified price within a specified time, and (B) the total amount due to the seller is received by him by a specified date; or

(2) to the effect that the security is being offered or sold on any other basis whereby all or part of the consideration paid for any such security will be refunded to the purchaser if all or some of the securities are not sold, unless the security is part of an offering or distribution being made on the condition that all or a specified part of the consideration paid for such security will be promptly refunded to the purchaser unless (A) a specified number of units of the security are sold at a specified price within a specified time, and (B) the total amount due to the seller is received by him by a specified date; *provided*

Under this contract of insurance, St. Paul assumed the duty to defend Haines and Wright, Robertson & Dowell against any action covered by the policy, even though the action may be groundless, false or fraudulent. The duty to defend is separate and distinct from, and not dependent upon, St. Paul's liability to pay, despite the fact that the two are ultimately related because they are dependent upon the basic scope of coverage under the policy. It is the scope of coverage which is at issue here; specifically whether the SEC action seeking injunctive and "such other and further relief as the Court may deem just and equitable" falls within the coverage of "any suit against the Insured alleging damages."

Plaintiffs contend that the SEC action was an action alleging damages because of the ancillary relief available in SEC 10b-5 suits. *See SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972); *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir.), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971). Plaintiffs contend that if the federal district court had found Rule 10b-5 violations, it could have awarded damages by requiring restitution and disgorgement of all or part of the attorneys' fees paid to the plaintiffs for services rendered in the debenture offering. Alternatively, plaintiffs argue that they could have been held to be aiders and abettors and therefore jointly and severally liable for a money judgment. Plaintiffs argue that because ancillary relief is available in SEC injunctive actions, the action was a suit alleging damages and St. Paul had a duty to defend. St. Paul argues that because only injunctive relief was sought against Haines and Wright, Robertson & Dowell, the suit was not a suit alleging damages, and is not within the policy coverage and therefore it had no duty to defend.

however, that this Section VII of the judgment shall not apply to any offer or sale of securities as to which the seller has a firm commitment from underwriters or others (subject only to customary conditions precedent, including "market outs") for the purchase of all the securities being offered.

Plaintiffs are quite correct when they urge that in Maryland an insurer is obligated to defend if the complaint potentially alleges a claim within the policy coverage. The Court of Appeals of Maryland in *United States Fid. & Guar. Co. v. National Paving & Contracting Co.,* 228 Md. 40, 178 A.2d 872, 879 (1962), adopted the general rule stated in Annot., 50 A.L.R.2d 458, 504:

Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

The thrust of plaintiffs' argument is that a money judgment, either restitution or disgorgement, potentially could have been ordered in the SEC action bringing the SEC action within the scope of the policy.

The underlying premise in plaintiffs' argument is that any money judgment is an award of damages. The Supreme Court has never taken this view. In *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Court stated:

We need not, and do not, go so far as to say that any award of monetary relief must necessarily be "legal" relief. See, *e. g., Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288 [80 S.Ct. 332, 4 L.Ed.2d 323] (1960); *Porter v. Warner Holding Co.,* 328 U.S. 395 [66 S.Ct. 1086, 90 L.Ed. 1332] (1946) (footnote omitted).

415 U.S. at 196, 94 S.Ct. at 1009. *Curtis* involved the right to a jury trial in an

The complaint also requested "such other and further relief as the Court may deem just and equitable." The SEC later filed an amended complaint which left the prayers for relief as to the plaintiffs unchanged.

action for damages and injunctive relief under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3612. The Court contrasted the situation in *Curtis* with cases [3] brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g), seeking an award of back pay and found under the Seventh Amendment that suits under Title VIII seeking damages and injunctive relief were to be tried by jury. In distinguishing suits brought under Title VIII from Title VII suits, the Court stated:

In Title VII cases, also, the courts have relied on the fact that the decision whether to award back pay is committed to the discretion of the trial judge. There is no comparable discretion here [Title VIII cases]: if a plaintiff proves unlawful discrimination and actual damages, he is entitled to judgment for that amount. Nor is there any sense in which the award here can be viewed as requiring the defendant to disgorge funds wrongfully withheld from the plaintiff. Whatever may be the merit of the "equitable" characterizations in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief.

3. *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969).

4. Section 205(a) was codified at 50 U.S.C.App. § 925(a) and provided:
   Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 [56 Stat. 28] of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond.
   Act of January 30, 1942, ch. 26, § 205(a), 56 Stat. 33. The Office of Price Administration was terminated by Congress by the Act of July 25, 1946, ch. 671, § 3, 60 Stat. 664. Section 205(a) is comparable to the statute in question in *Texas Gulf Sulphur, supra,* and here. 15 U.S.C. § 78u(e) provided:

415 U.S. at 197, 94 S.Ct. at 1010 (footnote omitted). It is clear then that the type of relief which plaintiffs contend was potentially available in the SEC action was equitable relief only and was not damages in any sense.

Both *Mitchell v. Robert DeMario Jewelry, Inc., supra,* and *Porter v. Warner Holding Co., supra,* were relied upon by the Second Circuit in *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d at 1307, when it found the power to order ancillary relief in a Rule 10b-5 action. The *Porter* case is particularly relevant because of the similarity between the ancillary relief sought there and the relief at issue here.

*Porter* involved the power of a federal court to order restitution in an enforcement proceeding under section 205(a) of the Emergency Price Control Act of 1942. [4] The Court upheld a district court decree compelling an apartment house owner to disgorge profits, rents or property acquired in violation of rent controls. 328 U.S. at 398–99, 66 S.Ct. 1086. The Court distinguished between an action brought by the Price Administrator under section 205(a) and a private action for damages under section 205(e). [5] The Court stated:

Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule or regulation thereunder, it may in its discretion bring an action in the proper district court of the United States or the United States courts of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings under this chapter.

Although Section 78u(e) was amended and redesignated by Act of June 4, 1975, Pub.L. No. 94–29, 89 Stat. 154, the amendments are not material to the substantive issues presented here. *See* 15 U.S.C.A. § 78u(d) (Supp. 1976).

5. Act of January 30, 1942, ch. 26, § 205(e), 56 Stat. 34, *as amended,* Act of June 30, 1944, ch. 325, § 108(e), 58 Stat. 641, *terminated,* Act of July 25, 1946, ch. 671, § 3, 60 Stat. 664.

Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205(e) . . .. When the Administrator seeks restitution under § 205(a), he does not request the court to award statutory damages to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205(e). Rather he asks the court to act in the public interest by restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity.

328 U.S. at 402, 66 S.Ct. at 1091 (citation omitted). It is clear then that, even assuming the district court could have awarded ancillary relief against the plaintiffs, the relief would have been traditional equitable relief and cannot be considered damages within the policy coverage.

Plaintiffs have cited *Doyle v. Allstate Ins. Co.,* 1 N.Y.2d 439, 154 N.Y.S.2d 10, 136 N.E.2d 484 (1956), for the proposition that an insurance company must defend an action in equity because the court may award damages as proper relief. Plaintiffs' reliance on *Doyle* is misplaced. The issue in *Doyle,* as here, was an insurance company's duty to defend under an insurance policy. Doyle had been sued to enjoin the use of his property as a kennel. The Court of Appeals of New York found that the company had a duty to defend because the trial court could have awarded damages in lieu of granting an injunction. 154 N.Y.S.2d at 13, 136 N.E.2d 484, *Doyle* is distinguishable because the federal district court's ability to grant ancillary relief, as plaintiffs apparently concede, is limited to restitution, or disgorgement. Plaintiffs have not cited the court any SEC injunction actions in which an actual damage award, differentiated from other types of money judgments, has been granted. The court has found none. Acceptance of plaintiffs' theory would require the court to find that all money judgments equal damages. This theory emanates not from the law but from the artful advocacy of enterprising counsel. That is not enough to receive this court's warm embrace.

Plaintiffs argue alternatively that because the SEC complaint charged the plaintiffs with being "aiders and abettors" in violation of rule 10b-5, the plaintiffs could have been held jointly and severally liable for damage awards entered against other defendants in the SEC action.

Plaintiffs cite *SEC v. Management Dynamics, Inc.,* 515 F.2d 801 (2d Cir. 1975), and *Ross v. Licht,* 263 F.Supp. 395 (S.D.N.Y. 1967), as authority for their position. Neither case is apposite to this action. While *Ross* did discuss an aider and abettor theory of liability, it did so in the context of a private damage action, distinguishable from ancillary relief at issue here. *Management Dynamics* was a SEC action seeking injunctive relief and the issues on appeal related only to injunctions entered against three defendants and did not concern rescission, restitution, disgorgement or other ancillary relief.

Plaintiffs' argument fails to recognize the nature and purpose of the ancillary relief available under *Texas Gulf Sulphur.* In attempting to expand a limited doctrine to cover the facts in this case, plaintiffs take a position well beyond that adopted by the federal courts. Disgorgement is available in a securities action only if one has made a profit. *Ohio Drill & Tool Co. v. Johnson,* 498 F.2d 186, 193 (6th Cir. 1974). It is not equivalent to a tort damage award because the monetary award is measured not by the damage to plaintiff, but by the gain of the defendant. *See SEC v. Shapiro,* 494 F.2d 1301, 1309 (2d Cir. 1974). Disgorgement is limited only to those who profit by their wrongdoing and does not extend beyond that. *See SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir. 1971); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972). Under the standards delineated by the Second Circuit, disgorgement would be a proper remedy only if the plaintiffs participated in and profited from the debenture

offering. Conversely, if plaintiffs neither participated in nor profited from the offering, the remedy would be unavailable. As a result, plaintiffs could not have disgorged profits they never earned. To find that plaintiffs could be liable for the profits of others, the court would have to ignore rationale underlying the disgorgement remedy. Defendant's motion for summary judgment will be granted as to paragraph 1(a) of the complaint.

Plaintiffs assert that the estoppel question is not properly before the court on paragraph 1(b) and therefore that it should not be the subject of summary judgment. Plaintiffs contend that the stipulation of counsel related only to paragraph 1(a) and material issues of fact exist concerning St. Paul's undertaking plaintiffs' defense. Plaintiffs have submitted the affidavits of C. Gordon Haines and John B. Powell, Jr. The Haines affidavit relates to conversations between plaintiffs and defendant's agents that took place prior to St. Paul's undertaking plaintiffs' defense and St.

Paul's actions following a settlement offer. The Powell affidavit concerns only the settlement issue. The stipulated facts before the court, however, present no dispute as to the material relevant facts and the court will address the issue. On October 2, 1973, St. Paul agreed to assume the SEC defense,[6] following an inquiry over the scope of coverage by plaintiffs. St. Paul's letter clearly indicates its position that coverage did not exist and its explicit reservation of all rights under the policy.

■ Even assuming that in a proper case, coverage can be afforded or extended by estoppel, see *Snyder v. Travelers Ins. Co.*, 251 F.Supp. 76 (D.Md.1966), the rule in Maryland is that:

> For principles of estoppel to be applicable, the party claiming the benefit of estoppel must have been misled to his injury and changed his position for the worse, having believed and relied upon the representations of the party sought to be estopped.

**6.** The letter reads in pertinent part:

October 2, 1973

Mr. C. Gordon Haines
Wright, Robertson & Dowell
6th Floor, Sun Life Building
Charles Center
Baltimore, Maryland 21201
Re: St. Paul Fire and Marine Insurance Company
  Policy No. 519JC3544—Claim No. 19A 702766
  SEC vs. Wright, Robertson & Dowell
Dear Sir:
You have previously notified the St. Paul Fire and Marine Insurance Company of the captioned suit by the SEC naming your law firm as one of the defendants. We have reviewed the complaint in that case and, as we have previously advised you, we note that the SEC is principally seeking injunctive relief and does not appear to be asserting any claim to recovery of civil damages against your firm. We have also advised you that the captioned policy issued by St. Paul Fire and Marine provides protection only in the event of your firm's exposure to the recovery of civil damages and therefore does not afford coverage with respect to the pending suit.
The St. Paul Companies recognizes, however, that, independent of the provisions of the policy, it might be in the best interest of both your firm and the carrier if St. Paul were to undertake defense of the SEC action. We therefore

offer, on behalf of the St. Paul Companies, to undertake your firm's defense in this action and to retain the Washington, D.C. law firm of Freedman, Levy, Kroll and Simonds for that purpose. This undertaking would include the responsibility to compensate the Freedman firm for efforts expended to date on your behalf in connection with this litigation. This undertaking, however, is subject to the following conditions and understandings:

2) The carrier shall have the right, upon written notice to you, to withdraw from this undertaking at any time with respect to fees and costs incurred subsequent to your receipt of such written notice.
3) The commitments and obligations of the carrier undertaken herein are limited only to the defense of the captioned suit as specifically set forth in this letter and do not characterize the coverage afforded by the captioned policy nor do they constitute any commitment for defense or indemnification of your firm beyond those expressly set forth herein and in the captioned policy.

I trust you will find these terms and conditions to be consistent with the best interests of your firm under present circumstances. If so, kindly signify your understanding and acceptance of these terms by signing and returning the enclosed copy of this letter.

*Neuman v. Travelers Indemnity Co.,* 271 Md. 636, 319 A.2d 522, 531 (1974); *see Lusby v. First National Bank,* 263 Md. 492, 283 A.2d 570, 577 (1971). Plaintiffs strive mightily to raise the specter that some known fact is both material and in dispute or that given further opportunity some will be discovered. This court is cognizant, of course, that the party seeking summary judgment has the burden of demonstrating that there is no genuine issue of fact and that on the basis of the undisputed material facts he is entitled to judgment as a matter of law. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245 (4th Cir. 1967). That burden has been met here. In the face of the clear language of the St. Paul letter, plaintiffs cannot assert a good faith reliance based on prior or subsequent acts by St. Paul. Plaintiffs accepted the defense subject to the conditions imposed in the letter which included St. Paul's absolute right to withdraw at any time upon written notice. Nothing in the Haines or Powell affidavits alters these facts nor does the court perceive any way in which discovery in the areas raised by plaintiffs could do so. Knowing the limits of St. Paul's undertaking, plaintiffs now cannot assert that defendant is estopped from denying coverage. Defendant's motion for summary judgment on paragraph 1(b) will be granted.

Judgment will be entered separately.