## O'NEILL INVESTIGATIONS, INC., Appellant,

v.

## ILLINOIS EMPLOYERS INSURANCE OF WAUSAU, Appellee.

No. 4429.

Supreme Court of Alaska.

Nov. 27, 1981.

---

James D. Rhodes and Spencer C. Sneed, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellant.

Paul Waggoner, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This appeal involves the scope of an insurance company's duty to defend under a debt collector's professional liability insurance policy against an action brought by the state under the Alaska Unfair Trade Practices and Consumer Protection Act. AS 45.50.471—AS 45.50.561. Also at issue is whether, in the event no duty is found, the insurance company is estopped from denying coverage.

The facts are undisputed. On March 17, 1977, the attorney general issued a complaint against O'Neill Investigations, Inc., a debt collection agency, alleging numerous violations of the Consumer Protection Act and seeking injunctive relief, civil penalties, and an order "for restoration to individuals

of monies or property acquired by defendants as the result of conduct complained of."[1] O'Neill promptly referred the complaint to Illinois Employers Insurance of Wausau [hereinafter Employers], with whom it was covered under a professional liability insurance policy, and requested that the law firm of Hartig, Rhodes, Norman & Mahoney be retained to defend it. By letter dated April 7, 1977, Employers "expressly denie[d] any obligation to defend in regard to the demand for injunctive relief," but authorized O'Neill to retain its choice of counsel and agreed to pay fifty percent of fees and costs along with "any *civil damages* that arise from the case." O'Neill responded on August 4, 1977, refuting Employers' assertion of limited coverage and demanding payment of its total defense costs. The following month, Employers' newly-retained attorneys informed O'Neill that their review of the policy and complaint indicated that there may be no coverage for the claims brought by the state, but requested that O'Neill provide it with "any information not included in the complaint" which would indicate otherwise. In December of 1977, Employers made a final settlement offer to pay half of O'Neill's defense costs. O'Neill rejected the offer on February 9, 1978. Employers commenced an action for declaratory judgment in the superior court on March 23, 1978, seeking an adjudication of the scope of its duty to defend O'Neill. The superior court held by summary judgment that Employers is under no obligation to defend the state's suit against O'Neill. O'Neill appeals from this judgment contending that Employers has a contractual duty to pay its defense costs and, alternatively, that Employers should be estopped from denying coverage under the insurance contract.

Initially O'Neill contends that the trial court improperly resolved material issues of fact in granting summary judgment in favor of Employers. There is no merit to

1. An appeal from this case was recently before this court in *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 1980), in which we held that the Alaska Unfair Trade Practices and

Consumer Protection Act, AS 45.50.471–.561, is not unconstitutionally vague as applied to third party debt collection agencies.

this contention. The construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts. *Tsakres v. Owens*, 561 P.2d 1218, 1222 (Alaska 1977); *Day v. A&G Construction Co., Inc.*, 528 P.2d 440, 443 (Alaska 1974). O'Neill has failed to set forth any specific facts showing that it could produce admissible evidence reasonably tending to dispute or contradict the facts as presented by Employers, and thus has failed to demonstrate the existence of a material issue of fact. *See Jennings v. State*, 566 P.2d 1304, 1309 (Alaska 1977), *Howarth v. First National Bank of Anchorage*, 540 P.2d 486, 489–90 (Alaska 1970). Rather, O'Neill in opposition to summary judgment simply made generalized assertions that factual issues exist regarding the parties' expectations of coverage under the insurance contract and Employers' alleged acts of bad faith. Once the party seeking summary judgment has satisfied its burden of showing the absence of genuine issues of material fact and its right to judgment as a matter of law, generalized allegations of factual issues in pleadings and memoranda will not suffice to prevent entry of summary judgment.[2] *E.g., Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 783 (Alaska 1975). Since there was no showing of any triable issues of material fact, this was an appropriate case for summary judgment.

## I. THE INSURANCE CONTRACT

■ O'Neill's main objection on appeal is with the trial court's interpretation of the insurance contract as providing no coverage, and thus no duty to defend in the

state's suit against O'Neill. An insurer is obligated to provide a defense whenever the allegations in the complaint state facts which create an action within, or potentially within, the ambit of protection promised the policyholder. *Afcan v. Mutual Fire, Marine & Inland Insurance Co.*, 595 P.2d 638, 645 (Alaska 1979); *Theodore v. Zurich General Accident & Liability Insurance Co.*, 364 P.2d 51, 55 (Alaska 1961). Thus, the scope of an insurer's duty to defend is determined by construing the terms of the insurance contract in reference to the allegations in the complaint. *Id.*; 7C J. Appleman, Insurance Law and Practice § 4683, at 50 (1979). The defense provision of the liability insurance policy purchased by O'Neill from Employers provides in relevant part:

"As respects such insurance as is afforded by this policy, the Company shall:

(1) defend any suit against the Insured Member alleging negligent act, error or omission, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent . . ."

The state's complaint charges O'Neill with engaging in a course of unfair and deceptive trade practices designed to collect payments from alleged debtors. The proscribed acts pleaded include the making of various misrepresentations to alleged debtors, threatening alleged debtors with exposing their debts to employers and business associates, telephoning employers of alleged debtors before entry of judgment, and impersonating law enforcement officers. In its complaint, the state seeks an injunction against the alleged unlawful practices,[3] civil

---

**2.** Alaska R.Civ.P. 56(e) provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

**3.** AS 45.50.501(a), which authorizes the attorney general to seek injunctions against violations of the Act provides:

"When the attorney general has reason to believe that a person has used, is using, or is about to use an act or practice declared unlawful in § 471 of this chapter and that proceedings would be in the public interest, he may bring an action in the name of the state against the person to restrain by injunction the use of the act or practice. The action may be brought in the superior court in the judicial district in which the person resides or is doing business or has his principal place

penalties,[4] and "such orders pursuant to AS 45.50.501(b) as [the court] deems appropriate for restoration to individuals of monies or property acquired by the defendants as the result of conduct complained of herein."[5]

Employers has consistently argued, both before the superior court and this court, that it has no duty under the policy to defend O'Neill against the state's suit since the complaint does not allege a "negligent act, error, or omission" or "seek damages."

 O'Neill does not argue that the policy covers claims for injunctive relief or civil penalties, but contends that the state's prayer for restoration of monies to injured individuals brings the action within the coverage of the policy. Relying heavily on the oft-stated principle that ambiguities in an insurance contract must be construed in favor of coverage,[6] O'Neill maintains that there is an ambiguity as to whether restitutionary relief such as that sought by the state constitutes "damages" within the intended coverage of the policy. The mere disagreement by the parties as to the interpretation of a contract does not necessarily create an ambiguity. *United States Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979); *Modern Construction Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976). An ambiguity exists "only when the contract, taken as a whole, is reasonably subject to differing interpretations." *Id.*

Thus, we must determine whether the language of the defense provision is reasonably susceptible to an interpretation which would provide coverage for the state's restitutionary claim.

This is the first case in Alaska concerning the scope of an insurance company's duty to defend under a professional liability insurance policy against a suit brought by the state under the Consumer Protection Act. Two courts in other jurisdictions which have addressed this or a closely related question have found no coverage to exist under similar defense provisions. The Washington Supreme Court held that an insurer was not obliged to defend against a suit brought by the attorney general against an automobile dealer for violations of Washington's Consumer Protection Act under a policy which provided that the insurer would defend any suit "seeking damages for [unfair competition], even if such suit is groundless, false or fraudulent." *Seaboard Surety Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 504 P.2d 1139, 1140 (1973). The court concluded that the state's complaint for injunctive relief, civil penalties and "such additional orders or judgments as may be necessary to restore to any person in interest any monies or property" acquired by violations of the Act, was not a suit "seeking damages" within the coverage of the policy. In *Haines v. St. Paul Fire & Marine Insurance Co.*, 428 F.Supp. 435 (D.C.

---

of business in Alaska, or, with the consent of the parties, in any other judicial district in the state."

**4.** AS 45.50.551 authorizes the issuance of civil penalties:

"(a) A person who violates the terms of an injunction or restraining order issued under § 501 of this chapter shall forfeit and pay to the state a civil penalty of not more than $25,000 per violation. For the purposes of this section, the superior court in a judicial district issuing an injunction retains jurisdiction, and the cause shall be continued, and in these cases the attorney general acting in the name of the state may petition for recovery of the penalties.

(b) In an action brought under § 501 of this chapter, if the court finds that a person is using or has used an act or practice declared unlawful by § 471 of this chapter, the attor-

ney general, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than $5,000 per violation."

**5.** AS 45.50.501(b) provides:

"The court may make additional orders or judgments that are necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of an act or practice declared to be unlawful by § 471 of this chapter."

**6.** *E.g. United States Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979); *INA Ins. Co. v. Brundin*, 533 P.2d 236, 241 (Alaska 1975); *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 n.20 (Alaska 1974); *Pepsi Cola Bottling Co. v. New Hampshire Ins. Co.*, 407 P.2d 1009 (Alaska 1965).

Md.1977), the insureds, who were attorneys, sought a declaratory judgment that the insurer was required to defend them against a Security and Exchange Commission (SEC) action seeking injunctive relief and "such other and further relief as the Court may deem just and equitable." The United States District Court granted summary judgment in favor of the insurer, holding that there was no coverage under a professional liability insurance policy which obligated the insurer to defend any suit "alleging damages" since the court was limited in SEC actions to granting restitutionary and other equitable relief. In response to the plaintiffs' argument that the potential of a money judgment, in the form of either restitution or disgorgement, brought the SEC action within the scope of the policy, the court stated:

> "Acceptance of plaintiffs' theory would require the court to find that all money judgments equal damages. This theory emanates not from the law but from the artful advocacy of enterprising counsel. That is not enough to receive this court's warm embrace."

*Id.* at 441.

O'Neill attempts to distinguish these cases on the ground that the government in both *Ralph Williams'* and *Haines* sought return to the status quo by restoring wrongfully withheld property to its rightful owners; whereas in the present case, O'Neill maintains, the state sought restoration of money which was legally owed by the debtors and passed on to the creditors, and thus was not wrongfully withheld. Accordingly O'Neill asserts that, unlike *Ralph Williams'* and *Haines*, the relief actually sought by the state here cannot properly be termed restitution, but is in fact "within

the range of reasonable interpretations of which the word 'damages' is susceptible."[7]

While the state's claim for "restoration to individuals of monies or property acquired by the defendant" by its alleged wrongful practices may not be within a strict definition of restitution, we believe that it does not constitute a claim for damages. Since there is no contention that the debtors paid sums which are not owed to O'Neill's clients, any claim for damages would have to be based on a contention that the debtors were wrongfully embarrassed, their privacy wrongfully invaded, or similar tortious conduct. The complaint does not allege such torts, and the demand for return of the entire amount collected has no relationship to any such damages. We conclude that under the terms of the policy there was no coverage, and no duty to defend.

This conclusion, however, does not end our inquiry for, as O'Neill correctly maintains, language in an insurance policy should be interpreted as understood by reasonable laypersons and not according to the interpretation of sophisticated underwriters. *See* R. Keeton, Insurance Law § 6.3, at 351 (1971). Consistent with this principle, we have held that an insurance policy must be construed so as to "provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language." *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 65–66 (Alaska 1977). *Accord, United States Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979); *Hahn v. Alaska Title Guaranty Co.*, 557 P.2d 143, 145 n.5 (Alaska 1976); *Continental Insurance Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972). We recog-

---

**7.** Employers urges that this is a new theory of coverage which was not argued at trial and which therefore should not be considered on appeal. O'Neill did not argue in the superior court that the state's complaint in fact sought damages, but rather argued that the policy was intended to cover equitable claims of restitution. As a general rule, parties cannot advance new theories or raise new issues in order to secure a reversal of the lower court's determination. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 848 (9th Cir. 1976); *Brown v. Wood*, 575 P.2d 760, 766 (Alaska 1978); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716, at 435–36 (1969). Although O'Neill's present theory of coverage was never expressly presented to the trial court, we consider it here because it is not dependent on any new or controverted facts, and because it is closely related to O'Neill's trial court theory and could have been gleaned from its pleadings.

nize that the average layperson cannot be expected to be aware of the often subtle distinctions the law draws in defining various remedies, and could reasonably understand "damages" as including certain claims of restitution involving money judgments. Consequently, we do not hold that all claims seeking restitution are outside of the standard liability policy provisions providing coverage for suits "seeking damages." The more specific question before us is whether Employers' insurance policy could be interpreted by a reasonable layperson as providing coverage for an action brought by the state to enjoin unlawful trade practices in violation of the Consumer Protection Act and seeking, as ancillary relief, restitution to injured individuals. Viewing the contract as a whole, we do not think that it is reasonably susceptible to such an interpretation.

▉ The policy viewed in its entirety[8] suggests that it was designed to insure against traditional tort claims for damages brought by private individuals alleging specific acts of employee misconduct. For example, the defense provision in dispute covers suits alleging "negligent act, error or omission,"[9] and the liability coverage provision specifies that the insured is obligated to pay damages incurred by reason of:

"any negligent act, error, omission, false arrest, detention or imprisonment, malicious prosecution, libel, slander or defamation of character, invasion of privacy, wrongful attachment, wrongful eviction, wrongful entry, humiliation alleged to have resulted therefrom, provided such conduct hereinbefore described was committed solely and in its entirety subsequent to the inception date of the Insured Member's certificate and claim for which is made and reported to the Company during the period this insurance is in force."

In addition, the deductible provisions apply to individual claims. We believe that the average insured reading these provisions would expect to be protected against liability arising out of claims by individual debtors alleging tortious misconduct on the part of O'Neill's employees. The state's suit, although based on a series of individual acts of employee misconduct which allegedly constitute unfair trade practices, is of a different nature than an individual tort claim; it is primarily an injunctive action against a deceptive course of conduct on the part of O'Neill.[10] The *Ralph Williams'* court recognized this distinction with regard to actions brought under the Washington Consumer Protection Act:

"The Attorney General's responsibility in bringing cases of this kind is to protect the public from the kinds of business practices which are prohibited by the statute; it is not to seek redress for private individuals. Where relief is provided for private individuals by way of restitution, it is only incidental to and in aid of the relief asked on behalf of the public."

504 P.2d at 1143.

Moreover, the exclusions are such as to put the insured on notice that this type of suit by the state does not come within the coverage. The exclusions include the following provisions:

"III. EXCLUSIONS:

This policy does not apply:

. . . . .

---

8. Contracts should be interpreted so as to avoid conflict among various provisions, and "the court should, if possible, give effect to all parts of the instrument." *Stordahl v. Gov't. Employees Ins. Co.*, 564 P.2d 63, 66 n.7 (Alaska 1977); *Modern Constr., Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1973). *See also* AS 21.42.230, which provides that insurance contracts should be construed according to their entirety.

9. In view of the much broader coverage in the liability provision including certain acts of in-

tentional misconduct, and the fact that it is unusual for a policy to provide liability coverage where there is no duty to defend, we do not hold that the defense provision is unambiguously limited to negligent conduct.

10. We do not address the question of whether a suit brought by a private individual seeking restitution for violations of the Consumer Protection Act would be covered.

(b) to any fraudulent, dishonest, or criminal act by the Insured Member or any employee of the Insured Member,

. . . . .

(d) to liability arising out of the wilful violations of any statute applicable to the Insured Member as a Collection Agency or Credit Bureau . . . . "

We do not believe that a reasonable lay interpretation of the Employers policy would encompass coverage for this type of action, and, therefore, find no ambiguity.

■ Alternatively, O'Neill argues that regardless of whether the policy is ambiguous, as an adhesion contract it must be interpreted so as to effectuate the reasonable expectations of the parties. Because of the inherent disparity in bargaining power between the insured and insurer, we have applied a more flexible approach to contract interpretation in the context of insurance law. Thus, we will honor the expectations of the parties as to coverage when those expectations are objectively reasonable. See *Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979); *Guin v. Ha*, 591 P.2d 1281, 1284–85 (Alaska 1979); *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 66 (Alaska 1977); *INA Life Insurance Co. v. Brundin*, 533 P.2d 236, 241–42 (Alaska 1975); R. Keeton, Insurance Law § 6.3, at 351–57 (1971). This principle reflects our awareness that long and complicated insurance policies are not always thoroughly examined by policyholders and that a "lay person's expectation of insurance coverage . . . [is] formed by many factors besides the language of the policies themselves." *INA Life Insurance Co. v. Brundin*, 533 P.2d 236, 242 (Alaska 1975); *see also* R. Keeton, Insurance Law § 6.3, at 351–52 (1971). For example, a policyholder may be led to expect coverage by advertisements or oral representations of an insurance salesperson. 533 P.2d at 242.

A finding of coverage beyond the clear terms of the policy will not be made, however, on the bare allegations of the policyholder that it expected such coverage. The insured must demonstrate through extrinsic evidence that its expectation of coverage was based on specific facts which make these expectations reasonable. In the present case, O'Neill has offered no extrinsic evidence in support of its alleged expectation of coverage. In the absence of any evidence to the contrary, we have no reason to believe that O'Neill expected, or even contemplated, that its liability policy would cover claims such as those brought by the state. Therefore, we affirm the superior court's interpretation of the policy as providing no coverage and no duty to defend.

## II. ESTOPPEL

O'Neill next argues that in the event no coverage is found under the policy, Employers should be estopped to deny its duty to defend by its initial offer to pay fifty percent of O'Neill's defense costs and its failure to deny total coverage within a reasonable time.[11] In response Employers, applying traditional contract principles,[12] argues that its fifty percent offer to O'Neill was rejected and thus cannot be the basis for estoppel. Alternatively, Employers contends that O'Neill has failed to prove that it suffered prejudice and, in any event, no prejudice could have resulted, since O'Neill was represented by its own attorneys.

Applying Alaska law, the Ninth Circuit Court of Appeals in *Bequette v. National Insurance Underwriters, Inc.*, 429 F.2d 896 (9th Cir. 1970), defined the four necessary elements of estoppel:

11. As part of its estoppel argument, O'Neill also contends that Employers has engaged in various unfair claim settlement practices in its dealings with O'Neill which should preclude it from denying coverage. We need not consider this issue since it was not presented to the superior court. *Williams v. City of Valdez*, 603 P.2d 483, 488 (Alaska 1979). In any event, O'Neill fails to substantiate these claims with any specific facts.

12. Rather than resolving the issue on contract principles of offer and acceptance, we are of the opinion that the fact that O'Neill rejected Employers' offer to pay a percent of the defense goes to the issue of reliance and prejudice.

"(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

429 F.2d at 900. *Quoting California State Board of Equalization v. Coast Radio*, 228 F.2d 520 (9th Cir. 1955). Most courts apply the doctrine of estoppel to extend insurance coverage where none exists, when the insurer, with knowledge of the facts and without reservation of rights, assumes an obligation to defend and later disclaims it.[13] *See, e. g., Fidelity & Casualty Co. of New York v. Riley*, 380 F.2d 153, 156 (5th Cir. 1967); *Salerno v. Western Casualty & Surety Co.*, 336 F.2d 14, 19 (8th Cir. 1964); Annot., 38 A.L.R.2d 1148, 1151 (1954). But, as with any estoppel, this result depends on a showing of prejudice; thus, it is incumbent on the insured to show that it relied to its detriment on the insurer's acceptance of an obligation to defend. Annot., 38 A.L.R.2d 1148, 1157 (1954).

O'Neill urges that prejudice should be presumed here by virtue of Employers' initial acceptance of a partial duty to defend. Some courts presume prejudice from an insurer's assumption of control of the defense. Annot., 38 A.L.R.2d 1148, 1160. *See also Fidelity & Casualty Co. of New York v. Riley*, 380 F.2d 153 (5th Cir. 1967); *Pendleton v. Pan American Fire and Casualty Co.*, 317 F.2d 96 (10th Cir. 1963); *Vornado, Inc. v. Liberty Mutual Insurance Co.*, 106 N.J. Super. 111, 254 A.2d 325, 328 (1969). Most of the courts which have taken this position have dealt with factual situations in which the insurance company assumed full control of the defense without making a reservation of its rights, employed its own attorneys, and then disclaimed coverage after judgment was taken against the insured. In this situation, the court presumes prejudice on the theory that evidence of prejudice would be in the hands of the insurer and that it would be futile to attempt to prove or disprove that the insured could have better investigated, negotiated or defended.

 The present case is distinguishable in many ways from the standard estoppel situation. First, Employers never actually assumed an obligation to provide full defense coverage to O'Neill, nor did it even commence fulfilling its partial acceptance of the defense. O'Neill waited over four months to reject Employers' fifty percent offer and knew that the matter of coverage was unresolved. Thus, it cannot be said that O'Neill desired or relied in good faith on the offer of a fifty percent defense.

Second, O'Neill at all times retained its own attorney and never relinquished control of its own defense. In those cases where the insured has been represented by its own attorney, courts have generally refused to apply estoppel on the grounds that there could be no prejudice. For instance, in *Thompson v. Roadway Express, Inc.*, 179 F.Supp. 254 (E.D.Mich.1959), the court found that no prejudice resulted from the insurer's unreserved assumption of defense and subsequent denial of liability on grounds of noncoverage where the insured's personal attorneys conducted every phase of the litigation, with the exception of filing an answer. Another example is provided by *American Legion Tri-County Memorial Hospital v. St. Paul Fire and Marine Insurance Co.*, 106 N.J.Super. 393, 256 A.2d 57 (1969). There, in a factually similar situation, the court rejected the insured's estoppel theory. There a private action seeking an injunction and damages was

---

**13.** While some courts hold that the doctrine of estoppel can never be used to extend or create coverage where none exists under the contract, we have noted that this "broad exemption ... from the doctrines of estoppel and waiver has been criticized as unreasonable." *Mountain View Sports Center, Inc. v. Commercial Union Assurance Co.*, 599 P.2d 1382, 1387 (Alaska 1979). Moreover, we have previously approved the use of estoppel "to make the policy valid and effectual as to the coverage the insured had been led to believe was included, despite the fact that the express wording of the policy excludes such coverage." *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 538 (Alaska 1968).

brought against the insured hospital. The insurance company initially agreed to defend the damage counts but not the injunction. The hospital retained its own counsel. After judgment without payment of damages, the insurer disclaimed any duty to pay defense costs. The court held that the insurer's initial partial assumption of liability did not estop it from later denying coverage since the insurance company did not have exclusive control of the defense and the hospital retained its own counsel. Finally, the Utah Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1971), held that estoppel was precluded due to a lack of prejudice where the insurer denied coverage three months after entering the case, but before trial, since the insured's counsel would have adequate time to prepare a defense or effect a settlement.

Here, O'Neill was represented in the state's action by attorneys of its own choice. Thus it cannot allege that it was denied the valuable right to select and retain its own counsel. Moreover, these attorneys are the same attorneys who represent O'Neill in this action. It cannot be asserted that there was a conflict of interest so that the attorneys were not adequately representing O'Neill's interests.

> Where the prejudice is not presumed, it "may be shown through loss of a favorable settlement of the case, inability to produce all testimony existing in support of the defense, inability to produce any material witness, loss of the benefit of any defense in law or fact through reliance upon the insurer's promise to defend, or withdrawal by the insurer too near in time to trial that the insured is unable to prepare his defense. This list is not exhaustive, but is to suggest ways in

which the insured may sustain his affirmative burden of proof of prejudice." (footnote omitted).

*R. A. Hanson Co., Inc. v. Aetna Casualty & Surety Co.*, 15 Wash.App. 608, 550 P.2d 701, 703–04 (1976). In the present case, O'Neill has not shown any specific prejudice. Rather, it makes general allegations that it has been deprived of control and a firm basis for deciding what course of action to take in the underlying action.[14] In light of the facts that Employers disclaimed coverage before trial on the underlying action and never actually commenced control of the action, and that O'Neill was at all times represented by its own attorney, we do not believe that O'Neill relied to its prejudice on Employers' initial offer to pay part of its defense. Thus we find no estoppel.

Having concluded that Employers has no contractual duty to defend under the liability insurance policy, and is not estopped from denying an obligation to defend, we affirm the superior court's entry of summary judgment in favor of Employers.

AFFIRMED.

MATTHEWS, Justice, dissenting.

The state has sued O'Neill for "unfair and/or deceptive acts or practices" under the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471–.561. The relief sought by the state includes, among other things, "restoration to individuals of monies or property acquired by [O'Neill] as the result of conduct complained of herein." In my opinion, this aspect of the state's claim falls within the coverage afforded under the insurance policy in question and therefore the appellee had the obligation to defend O'Neill.[1]

---

14. O'Neill asserts that it was deprived of control of the underlying action since under the "cooperation clause" in the policy, it could not "make any payment, assume any obligation, or incur any expense" without Employers' permission. However, O'Neill does not allege ever making a request to do any of the above and we find no evidence that this provision actually hindered O'Neill from incurring expenses in the underlying action.

1. *See Afcan v. Mut. Fire, Marine, and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979): "[T]he language of the standard duty to defend clause creates a reasonable expectation on the part of the insured that he will be defended by the insurer *whenever* a complaint states a cause of action within, or potentially within, the policy coverage." (Emphasis in original).

The policy language pertaining to liability coverage which is relevant here is as follows:

I. LIABILITY COVERAGE: To pay on behalf of the Insured Member all sums which the Insured Member shall be legally obligated to pay as damages in the performance of services for others in the Insured Member's business as a Collection Agency by reason of:

A. any negligent act, error, omission, false arrest, detention or imprisonment, malicious prosecution, libel, slander or defamation of character, invasion of privacy, wrongful attachment, wrongful eviction, wrongful entry, humiliation alleged to have resulted therefrom....

The state's claim falls within the above language. Misrepresentation is an important aspect of the state's claim. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535, 536 (Alaska 1980). Misrepresentations are acts or omissions. Further, the misrepresentations alleged by the state, to be actionable, need only be negligent. "Intent to deceive need not be proved. All that is required is a showing that the acts and practices were capable of being interpreted in a misleading way." *Id.* at 535 (footnotes omitted). Thus the state's claim is, in part, one for negligent acts or omissions. Moreover, the policy covers invasions of privacy. Among the acts with which O'Neill is being charged are making telephone calls to employers and other third parties standing in a close relationship to debtors concerning their debts. We have noted that such acts may give rise to liability on the state's complaint. *Id.* at 536. The essence of the wrong for which such liability is imposed is, it seems to me, invasion of privacy. This aspect of the state's claim is, therefore, also covered by the policy.

The majority opinion does not take direct issue with the foregoing conclusions. Instead, it argues that the "restoration of monies" which the state has sued for is somehow different from "damages" as that term is used in the insuring agreement. We have held that an insurance policy must be construed to "provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language." *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 66 (Alaska 1977). In my view, it is entirely unrealistic to suppose that a layperson would reasonably expect that damages do not include the restoration of monies.

A layperson interested in determining whether the term "damages" encompassed "restoration to individuals of monies" might reasonably refer to a standard dictionary. Webster's New International Dictionary defines "damages" in terms that clearly include what the state seeks in this case: "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." [2] If our hypothetical layperson wished to go further he might refer to a standard law reference work, Black's Law Dictionary. He would learn that "damages" include reparations; [3] and include all elements of a judgment which constitute the total amount to be recovered under correct principles of law. [4] He would thus learn that both the laity and the legal profession would describe what the state is seeking as "damages."

Having concluded that some of the state's claims are within the liability coverage clause of the insurance policy, it is necessary to turn to the exclusions portion of the policy to see whether there is an applicable exclusion. The majority opinion mentions two, but does no more than set them out and conclude with no discussion of them that they bar coverage. In fact, neither exclusion applies.

---

**2.** Webster's New International Dictionary 664 (2d ed. 1959).

**3.** Black's Law Dictionary 466 (rev. 4th ed. 1968), *citing McNaghten Loan Co. v. Sandifer*, 20 P.2d 523, 526 (Kan.1933).

**4.** Black's Law Dictionary, *supra* at 466, *citing Binder v. Harris*, 267 Mass. 162, 166 N.E. 707, 708 (1929).

The first excludes "any fraudulent, dishonest, or criminal act by the Insured Member or any employee of the Insured Member...." This exclusion does not apply because O'Neill is being charged with conduct which is not necessarily criminal, fraudulent, or dishonest. *See State v. O'Neill Investigations Inc.*, 609 P.2d at 534–35.

The second exclusion mentioned is an exclusion as to "liability arising out of the wilful violations of any statute applicable to the Insured Member as a Collection Agency or Credit Bureau...." Again, this exclusion does not bar coverage because O'Neill is not being charged only with willful violations. *Id.* Indeed, the state's complaint contains no allegation of willfulness with respect to any of the alleged misrepresentations made by O'Neill.

The majority opinion suggests that it is important that this suit was brought by the state rather than by a private individual, without specifying how that fact relates either to any condition of coverage or to any exclusion in the policy. Under neither the coverage conditions nor the exclusions are suits brought by government agencies or class actions precluded. Likewise, nothing in the deductible clause of the policy states that such clause is inapplicable to claims asserted by an entity in a representative capacity.

For the foregoing reasons, I dissent.