**STATE FARM FIRE & CASUALTY CO., a foreign corporation, Petitioner,**

v.

**JIN KU CHUNG, individually and as representative of Seung Hyo Chung, and Seung Hyo Chung, Respondents.**

No. S-2817.

Supreme Court of Alaska.

Aug. 4, 1989.

David S. Carter and Joe M. Huddleston, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for petitioner.

John E. Havelock, Anchorage, for respondents.

OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MOORE, Justice.

This case presents the question of whether the initial binder for an insurance policy providing coverage against uninsured motorists may be construed to provide coverage against underinsured motorists.

I.

Mr. and Mrs. Chung, having recently arrived in Alaska from Korea, spoke and understood little English. The Chungs were referred to State Farm Fire & Casualty Co. to purchase automobile insurance. The Chungs went to the State Farm office in July 1984 and purchased the policy in question from State Farm's agent Cathryn L. Saario. The purchase transaction occurred without conversation with Ms. Saario, who had filled the forms out in advance. It does not appear in the record who had instructed Ms. Saario on this matter, nor what that person had told the Chungs.

The policy, which became effective July 25, 1984, insured the Chungs against damage caused by an uninsured motor vehicle, in the amount of $100,000 per person and $300,000 per occurrence. On the day the Chungs purchased the insurance, Ms. Saario gave them a binder which made the policy effective as of July 25, 1984. The actual policy was not received by the Chungs until a few weeks later.

Before the policy arrived, the Chungs were involved in an automobile accident. The accident resulted from the negligence of the driver of the other car. Mrs. Chung was seriously injured.

The offending car was owned by Steve Triplett, but Max O'Dell was driving the car when the accident occurred. O'Dell was covered under Triplett's insurance policy as a permissive user. Triplett's policy provided coverage for bodily injury liability of $25,000 per person and $50,000 per occurrence. This policy complied with the amount of liability insurance required by Alaska's Motor Vehicle Safety Responsibility Act ("MVSRA") on that date. AS 28.-20.010—28.20.640.

Mrs. Chung's treatment proved costly. Mrs. Chung received $25,000 from State Farm under the medical benefits provisions of the Chungs' policy, and $25,000 from Triplett's insurer under the bodily injury liability provisions. Given that Triplett's car was insured, State Farm admits no further liability.

The legislature, prior to July 25, 1984, amended MVSRA to require insurers to offer underinsured as well as uninsured motor vehicle coverage. However, the Act did not become effective in relevant part until January, 1985. Ch. 70, § 21, SLA 1984. The Chungs' policy fully complied with MVSRA.

The Chungs filed suit against State Farm, claiming that their reasonable expectations were that "uninsured vehicle" coverage included "underinsured motorists." Thus, they sought to recover $100,000 from State Farm under the uninsured motor vehicle provision in their policy. State Farm moved for summary judgment on the ground that no coverage was available under the uninsured motorist provision. The Chungs opposed State Farm's motion, but they submitted no affidavits, statements of genuine issues of material fact, or other extrinsic evidence to support their position.

The trial court, Judge Milton Souter presiding, denied State Farm's motion. Judge Souter's ruling was based on his decision that "it is a reasonable inference that somebody looking at this binder, a reasonable person, in a position of the plaintiff looking at this binder when it was issued and seeing that it afforded only what was stated to be 'UM' [uninsured] coverage, would believe that they were getting 'UIM' [underinsured] coverage as well."

State Farm filed a petition for review which this court granted. We reverse the trial court and order that State Farm's motion for summary judgment be granted.

## II.

When reviewing a motion for summary judgment, this court must determine whether there exists any "genuine issue as to any material fact" and whether "any party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c). *See O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1172–73 (Alaska 1981).

The Chungs have not presented the court with any genuine issues of material fact. The uncontested facts show that the Chungs purchased the policy from Ms. Saario without conversation and were given a temporary insurance binder. The Chungs' binder contains a box entitled "UNINSURED MOTOR VEH." The box was checked to establish that this coverage was selected. The Chungs have alleged no misleading acts or representations by Ms. Saario. The question thus presented is whether, based on the above, either party was entitled to judgment as a matter of law.

The Chungs contend that their expectation of coverage under the uninsured motor vehicle provision was reasonable. The Chungs rely on the binder, and its alleged ambiguity, as giving rise to reasonable expectations of coverage which a full policy would not.

We have had occasion to determine the reasonable expectations created by an uninsured motorist insurance policy.

[An insurance policy] should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language....

... To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of the other provi-

sions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Stordahl v. Government Emp. Ins. Co.,* 564 P.2d 63, 66 (Alaska 1977) (footnotes omitted).

In *Stordahl,* we construed an actual insurance policy, not a binder. Construing the definition of "uninsured automobile" [1] in response to an argument similar to the Chungs', we held that an insured could reasonably expect coverage under an uninsured motorist provision "only if there were no other applicable insurance to compensate him for injuries caused by an automobile." *Id.* at 67. Since the other driver was insured at the statutory minimum level, recovery under the uninsured automobile provision was denied.

The Chungs acknowledge that *Stordahl* would preclude recovery if they had received their policy.[2] Their central contention is that the binder in question gave rise to reasonable expectations of coverage which a full policy would not.

We find no merit in this argument. An insurance binder "shall be considered to include all the usual terms of the policy as to which the binder was given together with the applicable endorsements designated in the binder, except as superseded by the clear and express terms of the binder." AS 21.42.240(a).[3] The binder in question provides for "UNINSURED MOTOR VEH." coverage and expressly adopts the "terms and conditions" of the automobile policy "in current use" by State Farm.[4] The policy in current use by State Farm at the time contained a definition of "uninsured motor vehicle" functionally identical to the one construed in *Stordahl.* The binder contains no clear and express terms which supersede this definition.

The Chungs contend that the binder is ambiguous. This alleged ambiguity arises from the fact that a person insured against an uninsured motorist is sometimes better off if the driver that injures him is uninsured than if the driver is insured at the statutory minimum level.[5] The Chungs argue that a purchaser of insurance would reasonably expect to be covered up to the

---

1. The policy in *Stordahl* defined "uninsured automobile" as

   An automobile with respect to the ownership, maintenance or use of which there is, in at least the amount specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury, liability bond or insurance policy applicable at the time of the accident with respect to any organization legally responsible for the use of such automobile....

   564 P.2d at 65.

2. The State Farm policy which the Chungs' binder pertained to defined an "uninsured motor vehicle" as

   a land motor vehicle, the ownership, maintenance or use of which is ... not insured or bonded for bodily injury liability at the time of the accident; or [which is] ... insured or bonded for bodily injury liability at the time of the accident; but ... the limits of liability are less than required ...

   We find this clause the functional equivalent of the clause in *Stordahl* for the purpose of our present analysis.

3. AS 21.42.240 provides in full:

   Binders: (a) A binder or other contract for temporary insurance may be made orally or in writing, and shall be considered to include all the usual terms of the policy as to which

the binder was given together with the applicable endorsements designated in the binder, except as superseded by the clear and express terms of the binder.

   (b) A binder is not valid after the issuance of the policy with respect to which it was given, or after 90 days from its effective date, whichever period is the shortest.

   (c) If the policy has not been issued a binder may be extended or renewed after the 90 days with the written approval of the insurer.

   (d) This section does not apply to life or disability insurances.

4. In *Stewart–Smith Haidinger, Inc. v. Avi–Truck, Inc.,* 682 P.2d 1108, 1117 (Alaska 1984), we stated that "absent a 'usual' policy, the binder must be interpreted in accordance with the reasonable expectations of the insured." This statement, though not on point, is indicative of a binder's function as a proxy for the 'usual' policy. Only where no such policy exists may the binder alone form the basis for an insured's expectations. In all other cases, the binder must be interpreted according to the terms it incorporates. *See* Annotation, *Temporary Automobile Insurance Pending Issuance of Policy,* 12 A.L.R.3d 1304 § 11 (1967).

5. This is true only when the injured driver's uninsured motorist coverage exceeds the statutory minimum level.

limits of the uninsured motorist policy whether the other driver was insured or not. We disagree. Such an expectation would not be reasonable. This may be an anomalous situation, but that does not mean that the binder is ambiguous. Having incorporated an unambiguous definition, the binder is clear as to what coverage is provided.

Had the Chungs alleged that Ms. Saario told them they would be covered to $100,-000/$300,000 in any accident, they might have had an oral contract claim. This would not, however, create an ambiguity in the binder. In any event, they have not so alleged, nor could they given that they did not converse with Ms. Saario.

The Chungs argue that the legislature, by amending MVSRA to require insurers to offer underinsured motorist coverage, verified the reasonableness of their expectation of coverage here. This contention also lacks merit.

State Farm, Triplett and the Chungs were all in full compliance with applicable law at the times in question. The meaning of the word "uninsured" and the reasonable expectations created by it are not altered by a new law aimed at improving the statutory scheme. By requiring underinsured motorist insurance, the legislature acknowledged that uninsured motorist coverage, by itself, is not a complete answer for many accident victims. The legislature did not alter the plain meaning of the term "uninsured motorist."

Our holding is a limited one. An insurance binder providing for "uninsured motor veh." coverage and incorporating by reference a clear definition of the term is not ambiguous. Absent specific allegations of facts which would indicate otherwise, one may not reasonably expect coverage under this provision when injured by a motorist who has insurance in the statutory minimum amount. State Farm is entitled to judgment as a matter of law. The order of the superior court is REVERSED and REMANDED with instructions to grant State Farm's motion for summary judgment.

BURKE, J., with whom MATTHEWS, C.J., joins, dissenting.

MATTHEWS, Chief Justice, with whom BURKE, Justice, joins, dissenting.

I dissent.

Under Alaska law, the Chungs are entitled to "the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language." *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977) (footnote omitted). Judge Souter believed that this issue could not be resolved as a matter of law. Like the majority, I disagree with his conclusion that the evidence presents a genuine issue of material fact; I would dispose of the question as a matter of law. Unlike the majority, however, I believe that the issue should be resolved in favor of the Chungs. I believe that reasonable jurors could reach but one conclusion: the reasonable expectation of a person who buys $100,000 of "uninsured motorist" coverage is that there will be insurance available of at least $100,000. It makes no difference to such a person whether coverage to the extent of the uninsured motorist limits is not available because the other motorist has *no* policy of insurance, or because his policy limits are less than $100,000. In either case, the other motorist is "uninsured" in whole or in part.

The Chungs purchased a policy which provided liability coverage of $100,000 for bodily injury suffered by one person. This is well beyond the amount of $25,000 required at the time by Alaska's Motor Vehicle Safety Responsibility Act. AS 28.20.-010–28.20.640. There was a like increase in the amount of their coverage for injuries caused by an uninsured motorist. The Chungs paid a higher premium for this increase, but they are now told that the $100,000 in coverage for which they paid is not available to them, because the other motorist was insured under a policy providing the $25,000 minimum required by Alaska law. Despite their purchase of additional insurance, the Chungs are entitled to take advantage of their uninsured motorist coverage only when and if they are injured

by a motorist having *no* insurance. Most laypersons of my acquaintance would agree with a Georgia court's observation that this is an "absurd result." *Spence v. State Farm,* 136 Ga.App. 436, 221 S.E.2d 643, 644 (1975), *aff'd,* 236 Ga. 714, 225 S.E.2d 238 (1976).

This conclusion does not conflict with *Stordahl.* In *Stordahl,* the uninsured motorist coverage was $15,000. The other driver had a $50,000 policy. The full $50,-000 limit of this policy was paid Stordahl. He sought, in addition, payment of the $15,000 limit of his uninsured motorist coverage. We held that Stordahl could not reasonably expect uninsured motorist coverage in those circumstances. *Stordahl,* 564 P.2d at 67. This result was especially appropriate because a clause of the policy at issue required reduction of any amount payable under the uninsured motorist endorsement by sums received from or on behalf of the operator of the other vehicle. *Id.* The *Stordahl* opinion did not address the question presented in the instant case— whether one who purchases uninsured motorist coverage of a stipulated amount reasonably expects coverage of at least the stipulated amount. Thus, *Stordahl* cannot be viewed as contrary precedent.

I would remand with instructions to the trial court to enter judgment in favor of the Chungs.